[No. 25407-3-I.  Division One.  July 29, 1991.]

THE STATE OF WASHINGTON, *Appellant,* v. LEE
ARTHUR HARPER, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for appellant.

*Philip J. Lynch* of *Washington Appellate Defender Association,* for respondent.

FORREST, J. — The State appeals the imposition of an exceptional sentence of 18 months' in-house drug rehabilitation instead of a standard range of 43 to 57 months' confinement for Harper's two burglary convictions. We reverse and remand for resentencing.

Lee Harper has seven prior felony convictions, starting when he was 15 years old. He alleges that the crimes were committed, including those in this case, to support a drug addiction. Harper claimed that the last 12 to 13 years of intermittent incarceration did not deter him from crime because of his addiction. He pleaded guilty to two counts of second degree burglary on February 9, 1989; his offender score for both burglaries was 12. Harper requested an exceptional sentence below the standard range. The State recommended a sentence of 54 months' confinement.

The court entered findings that: (1) Harper's long history of drug addiction is the primary reason for committing the crime, (2) further incarceration will not deter Harper from future crimes, (3) adequate drug treatment is the only reliable way to prevent future crimes, (4) Harper is amenable to treatment, and (5) the community

is better protected if Harper is placed in treatment. The court imposed an exceptional sentence of 188 days in jail, with credit for 188 days served; 240 hours' community service; 2 years community supervision; and completion of an 18-month drug treatment program. Additional conditions of the sentence included prohibition of drug use or association with drug users or dealers, and Harper is to obtain and maintain employment after treatment.

■ When a person is convicted of a felony the sentencing judge must impose a sentence within the standard range unless the court "finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A-.120(2). An exceptional sentence is subject to appellate review under RCW 9.94A.210(4) which provides as follows:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

Subsection (b) is not argued by the parties and is not at issue. The State asserts both the insufficiency of the record to support the findings and the inadequacy of the reasons given as support for the sentence given. Since we hold that the reasons do not justify an exceptional sentence, we will assume for the purposes of this opinion that the findings are supported by the record.[1] The reasons given for an exceptional sentence are evaluated as a

[1]However, that portion of finding of fact 8, "the community would be better protected if the defendant was placed in an inpatient drug placement treatment program", is more properly a conclusion of law, *State v. Pennington*, 112 Wn.2d 606, 609, 772 P.2d 1009 (1989). The implicit finding underlying such a conclusion is that the treatment program will be successful and that he will commit no crimes for at least 23 months following release from the program, which is the minimum period for which he would be incarcerated as a standard sentence. We note that Harper's history of returning to drug use and crime, even after completing drug treatment and obtaining employment, seriously calls this finding into question.

matter of law in light of the purposes of the Sentencing Reform Act of 1981 (SRA).[2]

In essence, the trial court's reasoning is that a history of crimes committed to feed a drug habit coupled with a finding of an amenability to treatment justifies an exceptional sentence. Surprisingly, since the factual pattern is not uncommon, neither party has cited any controlling Washington authority nor has our research identified any. We find, however, that the answer is clearly implicit in the Washington cases and the purposes of the SRA.

■■ In *State v. Pennington*[3] the Supreme Court stated that "[a] finding that the defendant is a drug addict does not justify a sentence outside the standard range. Otherwise, the purposes of punishment would be undermined whenever a defendant claimed he had a drug problem." *Pennington*, at 611. While technically dicta, because the court found the record only established that he committed the offense to support his girl friend's addiction, the court left little doubt as to its position on the issue before this court, stating, "[u]pon considering public policy and the purpose of this chapter, we hold, as a matter of law, that a drug or alcohol problem in and of itself is not a substantial or compelling reason justifying imposition of an exceptional sentence." *Pennington*, at 611. Although not conclusive, we find this language strongly persuasive.

Harper does not argue that his case is different from that of other drug addicts that choose to turn to crime to support their habit. Instead, he argues that treating the habit is better social policy than incarceration. This argu-

---

[2]RCW 9.94A.010 states in part that the purposes of the SRA are to:

"(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

"(2) Promote respect for the law by providing punishment which is just;

"(3) Be commensurate with the punishment imposed on others committing similar offenses;

"(4) Protect the public;

"(5) Offer the offender an opportunity to improve him or herself; and

"(6) Make frugal use of the state's resources."

[3]112 Wn.2d 606, 610, 772 P.2d 1009 (1989).

ment is similar to that rejected by the Supreme Court in *State v. Estrella*.[4] In *Estrella* the defendant had a long criminal history and faced a standard sentence of 43 to 57 months. The trial court found that while Estrella had been trained for a number of vocational fields he had never been assisted in obtaining employment and readjusting to society after incarceration. The trial court ordered an exceptional sentence of 1 year in jail followed by a year of work release and treatment for ex-offenders. In rejecting this exceptional sentence, the Supreme Court noted that rehabilitation enjoys a lesser role in the current sentencing system.[5] The court noted that, right or wrong, the Legislature has rejected the notion that the cause of the defendant's criminality may be diagnosed and treated.

Harper bases support of his sentence almost totally on a request to this court to expand the holding of *State v. Bernhard*[6] to allow an exceptional sentence of drug treatment for any defendant who proves his drug addiction is the primary reason for his long history of criminal activity. As urged by the defendant in *Estrella*, Harper would have this court approve an exceptional sentence below the standard range in large part because of his extensive criminal history. Like the court in *Estrella*, we hold that

> [t]o affirm the imposition of a lesser sentence (consisting largely of rehabilitative conditions) because of the defendant's repeated criminal offenses would mean, in essence, the judicial repeal of the premise upon which the legislatively enacted SRA is based.

*Estrella*, at 359.

---

[4]115 Wn.2d 350, 357, 789 P.2d 289 (1990).

[5]For instance, RCW 9.94A.030(11), in pertinent part, clearly indicates that "orders directing an offender affirmatively to participate in rehabilitative programs" is *not* an acceptable "crime-related prohibition" that may be part of a sentence.

[6]108 Wn.2d 527, 741 P.2d 1 (1987).

In *Bernhard* the standard range sentence was 4 to 12 months and the State recommended a sentence of 4 months' partial confinement. Interpreting the language and intent of the SRA, the court held that community supervision was within the limited parameters available for an exceptional sentence in that case.[7] RCW 9.94A.383 expressly allows a sentence of community supervision only when the defendant is subject to "sentences of confinement for one year or less . . .." In *Bernhard* the court based its approval of the exceptional sentence on this provision.[8] A central point of the *Bernhard* decision was that the sentence of 12 months' inpatient treatment amounted to a sentence of confinement equal to the top end of the standard sentence, and therefore the sentence "constitut[ed] punishment in proportion to the offense committed." *Bernhard*, at 544. In other words, the exceptional sentence ordered in *Bernhard* was suited to the particular defendant without creating vastly disparate sentences between the defendant in that case and others similarly situated. While the basis for the holding in *Bernhard* may not be absolutely clear, there is nothing to suggest that the court was contemplating a major revision of the SRA to permit rehabilitative drug treatment when the standard range sentence exceeds 1 year. Even less tenable is the notion that the court was approving of such an exceptional sentence where the standard range is almost three times the inpatient portion of the exceptional sentence.

In *State v. Shove*[9] the Supreme Court stated the SRA should always be interpreted "in a manner that ensures the structuring of trial court discretion." *Shove*, at 89. The court noted that sentencing discretion is permitted only

---

[7] *Bernhard*, at 544.

[8] "[W]e affirm the trial court's sentence, requiring that it be imposed as an exceptional condition of a community supervision sentence imposed pursuant to RCW 9.94A.383." *Bernhard*, at 545.

[9] 113 Wn.2d 83, 89, 776 P.2d 132 (1989).

where the SRA specifically authorizes it and the court has fashioned "guidelines to contain these limited circumstances." *Shove*, at 89 n.3. It is for this reason that we cannot now read the decision in *Bernhard* to give sentencing judges unlimited discretion to order exceptional conditions. To do so would create the potential of widely disparate sentencing that does violence to the principles of the SRA. Other cases suggest that *Bernhard* is to be limited to its precise factual situation.[10]

In *State v. Skillman*[11] the defendant was found guilty of attempted kidnapping and was given an exceptional sentence of 36 months in prison followed by 12 months' community placement. The court found that community placement and community supervision are not authorized as an element of sentencing, either standard or exceptional, in cases where the standard sentence exceeds 1 year. The court distinguished *Bernhard*, reasoning that the clear language of the SRA authorized community supervision as an element of standard first offender sentences or sentences of less than 1 year.[12]

The facts of *In re Chatman*[13] are similar to those in this case. In *Chatman*, the sentencing judge sentenced the defendant to 57 months' confinement, but suspended 33 months and directed the defendant to complete drug treatment as a condition of the sentence. This court found that the sentencing court had no authority to suspend the sentence. More on point, however, we found the sentencing court lacked authority to order community supervision, or designate the defendant's place of confinement.[14] While the sentencing judge in this case did not specifi-

---

[10]*State v. Skillman*, 60 Wn. App. 837, 809 P.2d 756 (1991); *In re Chatman*, 59 Wn. App. 258, 796 P.2d 755 (1990).

[11]60 Wn. App. 837, 809 P.2d 756 (1991).

[12]*Skillman*, at 840 (citing RCW 9.94A.120(5); RCW 9.94A.383).

[13]59 Wn. App. 258, 796 P.2d 755 (1990).

[14]*Chatman*, at 262.

cally suspend Harper's sentence and order drug treatment as a condition, the effect is identical and the result should be the same.[15]

The cases decided since *Bernhard* suggest a narrow reading of that case; the policy reasons against the expansive reading urged by Harper are overwhelming. Such expansion would permit wildly inconsistent sentences on essentially the same fact patterns. For example, if Harper came before another judge who was unpersuaded of the beneficial effect of the treatment program, Harper would receive a nonappealable standard range sentence of at least 43 months. Indeed, another judge might find that the facts called for an exceptional sentence upward. In *State v. Stephens*,[16] for instance, the defendant pleaded guilty to eight counts of burglary. His offender score for each count was 19. Pursuant to the sentencing reform act the upper limit of the sentencing grid for this crime was "9 or more". In *Stephens* the court agreed that one who is already at the upper limit of the sentencing grid "should receive a *greater* punishment *if he commits more than one current crime.*" (Some italics ours.) *Stephens*, at 243. In this case Harper had an offender score of 12 and was being sentenced for committing two current crimes. As in *Stephens*, a standard range sentence would result in no penalty for Harper's second burglary. While an exceptional sentence above the standard is never required, it would be anomalous if the same fact situation that was sufficient to justify an exceptional sentence *above* the

---

[15]In discussing his sentence Judge Mattson told Harper, "If you get reported violations, I am not going to be turning it over to some judge . . . .. You are going to be coming back in front of me and the whole premise of success is keeping off drugs and getting into some normal occupation in life and being a regular citizen. . . . And, so, once I have made this decision, I have now much less power to impose punishment. I have elected to give up this theory in this case of imposing a 43-month sentence and suspending it. I could have done that. I just think I am inviting appealing your case . . . .. I don't think it makes any sense."

[16]116 Wn.2d 238, 803 P.2d 319 (1991).

standard could also support a sentence substantially *below* the standard range.

Similarly, assume another defendant with precisely the same criminal history as Harper, but who committed his crimes to support a gambling habit rather than a drug habit, pleading guilty to two burglaries. That defendant would receive a standard range sentence *instead of a brief treatment program like Harper's*. Such disparate results are directly contrary to the first stated purpose of the SRA, that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history, and to the third purpose, that punishment be commensurate with the punishment imposed on others committing similar offenses. It also violates RCW 9.94A.340 by discriminating based on elements not related to the defendant's crime and record.[17] In enumerating mitigating factors, the Legislature specifically excluded voluntary drug use as a basis for a defendant's lack of capacity to conform his conduct to the law.[18] Presumably, this means that a defendant may not urge as a mitigating factor lack of capacity due to his voluntary drug use. While this is not precisely Harper's argument, the Legislature clearly indicated that Harper's argument should not be accepted. Harper committed the burglaries in full possession of his faculties to obtain money to support his drug habit. This is even less persuasive as a reason for mitigation than having his faculties clouded by drugs.

---

[17]"The sentencing guidelines and prosecuting standards apply equally to offenders in all parts of the state, without discrimination as to *any element that does not relate to the crime or the previous record of the defendant.*" (Italics ours.) RCW 9.94A.340.

[18]"The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, was significantly impaired (voluntary use of *drugs* or alcohol is excluded)." (Italics ours.) RCW 9.94A.390(1)(e).

Indeed, from the point of view of the trial court's analysis, there would not seem to be any difference between committing burglaries to secure the funds to buy drugs and selling drugs for the purpose of buying drugs, a pattern which is likewise often before the courts. For first-time offenders such a record would have permitted a treatment program prior to January 1, 1988. Effective that date the Legislature excluded such offenders from consideration as first-time offenders and increased the seriousness of the offense so that first-time offenders now face a standard range of 21 to 27 months.

■ Approving this sentence would take us back to pre-SRA days when some judges were strong believers in treatment where drugs and alcohol are involved and other judges were strong believers in punishment irrespective of a possible underlying cause. Such judicial differences are inevitable and, if allowed, such radically different sentences for the same crime with the same criminal history would fail to "[p]romote respect for the law by providing punishment which is just". RCW 9.94A.010(2). Different punishments for the same crime and same history cannot both be just.

■ Mr. Harper's situation is a tragic one for him and financially expensive and undesirable for the State. We can empathize with judges who feel frustration with the sentencing options available. In this case the judge stated "I think we are letting ourselves get too impoverished by the options we choose to deal with serious and complex problems of criminal law violations in relation to long-standing addictions. I just think we have to try some of these other things." This view is supported by a number of the materials cited by Harper in his brief. However, no matter how persuasive those arguments may be as a matter of policy, they must be addressed to the Legislature and not to the courts. As was the case in dealing with sex offenders, when the Legislature is persuaded that drug treatment is desirable it will affirmatively authorize such

sentencing.[19] Our responsibility is to apply the SRA as written.

Reversed and remanded for sentencing within the standard range.

GROSSE, C.J., and SCHOLFIELD, J., concur.

Reconsideration denied September 20, 1991.

Review denied at 118 Wn.2d 1017 (1992).

---

[19]*See* RCW 9.94A.120(7); *State v. Jackson*, 61 Wn. App. 86, 92, 809 P.2d 221 (1991).