[No. 29301-0-I.   Division One.   May 24, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. BRIAN L. FRIEDERICH-TIBBETS, *Appellant.*

*Elizabeth Govaerts* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Lang, Deputy,* for respondent.

WEBSTER, C.J. — Brian Friederich-Tibbets (Tibbets) appeals a trial court's decision denying his request for a "downward departure" from the standard range sentence imposed.

## FACTS

On July 22, 1991, Tibbets pleaded guilty to one count of possession of cocaine with intent to deliver in violation of RCW 69.50.401(a)(1)(i). The standard range was 26 to 34 months' imprisonment. The court imposed a 26-month sentence with 12 months' community placement.

At sentencing, held on September 27, 1991, the trial court made the following findings:

3. Immediately upon arrest, the defendant was completely remorseful and cooperative, giving a detailed and full confession. He exhibited genuine signs of remorse at sentencing.

4. The defendant's participation in this offense was as a middleman. He received $3,000 from an undercover officer posing as a buyer, delivered the money to a supplier of cocaine, and arranged for a meeting between the undercover officer and the supplier for purposes of a sale.

5. Since this offense, the defendant has matured and made substantial and significant changes in his life and lifestyle. He has completely turned his life around and is doing well in all aspects of his life.

. . . .

7. For the last two years the defendant has maintained steady employment. He is very highly regarded by his employers.

8. Since this offense the defendant has remained crime free.

. . . .

10. The defendant has successfully completed substance abuse treatment and has participated regularly in Alcoholics

Anonymous. He has not used alcohol or controlled substances for almost two years. . . .

11. The most frugal use of the State's resources in this case would be a work release sentence in the King County Jail as recommended by the Department of Corrections. Such a sentence would allow the defendant to continue in a positive direction, maintain his job and family, and minimize the risk of reoffending over the long term.

12. A sentence within the standard range . . . would provide for a longer period of incarceration and would be more commensurate with the punishment imposed on others committing similar offenses and having similar criminal histories. However, such a sentence would result in the defendant's loss of employment, seriously disrupt the positive progress he has made, and increase the risk of his reoffending over the long term.

13. The balance of the above factors, considered as a whole and in light of all the general purposes of the Sentencing Reform Act, tips clearly in favor of the work release sentence recommended by the Department of Corrections. More probably than not, both the public and the defendant would benefit more from such a sentence.

Regardless of these findings, the trial court entered the following conclusion of law:

None of the above facts, alone or in combination, constitute substantial and compelling mitigating factors sufficient to justify an exceptional sentence below the standard range of 26-34 months.

The court, in explaining its reasoning during the sentencing hearing, made the following comments:

Let me say at the outset that if I thought as a matter of law . . . I had the discretion in this case to impose an exceptional sentence, I would.

. . . .

. . . *[However,] in order to justify an exceptional sentence, not only do I have to find that the standard range is inappropriate, but there must be reasons and . . . those reasons must relate not to individual differences from one defendant or another,* not to the fact that a defendant has had a drug problem or an alcohol problem and has addressed that problem or changed his life around.

(Italics ours.) The court continued:

[M]y conclusion is that none of these factors other than possibly the frugal use of the State's resources, which, again, does

not relate to the nature of the crime or whether this is an exceptional example of this particular offense, . . . are . . .[,] as a matter of law[,] appropriate factors for the court to consider in granting an exceptional sentence.

[H]owever, because I'm somewhat frustrated . . . by this case . . . I'm going to do something which I have not done before, and that is, I'm going to make. findings for purposes of the record.

## DISCUSSION

Tibbets claims the trial court erred when it held that the findings in this case were not, as a matter of law, the type of reasons under the Sentencing Reform Act of 1981 (SRA) that the court can consider for purposes of an exceptional sentence. We agree and, as the trial court has impliedly invited us to do, remand for resentencing.[1]

RCW 9.94A.010 states that the SRA is designed to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect to the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) *Offer the offender an opportunity to improve him or herself; and*

(6) *Make frugal use of the state's resources.*

(Italics ours.) RCW 9.94A.010. In light of the Legislature's fifth and sixth stated purposes of the SRA, we find that the

---

[1]Tibbets claims, and we agree, that despite the general rule that a "sentence within the standard range . . . shall not be appealed" (RCW 9.94A.210(1)), *State v. Ammons*, 105 Wn.2d 175, 182-83, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986) and *State v. Ward*, 49 Wn. App. 427, 429-30, 743 P.2d 853 (1987) allow for such in this case. Here, as in *Ward*, we are asked to review a possible procedural error: whether the trial court erred in finding it could not, as a matter of law, impose an exceptional sentence downward. In addition, the federal courts have recognized that a district court's refusal to grant a downward departure is reviewable if, as is the case here, it is made under the mistaken conclusion that, as a matter of law, the court did not have the authority to depart. *United States v. Rogers*, 972 F.2d 489, 492 (2d Cir. 1992); *United States v. Califano*, 978 F.2d 65 (2d Cir. 1992); *accord, United States v. Brown*, 985 F.2d 478 (9th Cir. 1993).

trial court erroneously concluded that it did not, as a matter of law, have discretion to find there were substantial and compelling reasons to impose an exceptional sentence downward.

Here, the trial court found that Tibbets had "completely turned his life around" by making "substantial and significant changes in his . . . lifestyle", maintained steady employment for 2 years, and successfully completed alcohol and substance abuse treatment. As the trial court found, a sentence within the standard range would result in Tibbets' loss of employment, disrupt the positive progress he has made, and increase the risk of his reoffending over the long term. Incarceration would not only sever Tibbets' ties to the conventional world but further increase his chances of becoming entrenched in deviant lifestyles and values. A work release sentence, as recommended by the Department of Corrections, would both allow Tibbets an opportunity to improve himself and make frugal use of the State's resources.

In addition, the drafters of the SRA, in listing the stated purposes, noted that the statute "does not eliminate . . . discretionary decisions affecting sentences". RCW 9.94A.010. This is in line with the numerous federal court decisions which have held that the federal SRA was not meant to completely abolish the trial court's discretion in regards to downward departures. *E.g., United States v. Rogers*, 972 F.2d 489 (2d Cir. 1992). Furthermore, RCW 9.94A.390, which sets out "illustrative factors" constituting mitigating circumstances for a downward departure, states that "[the examples] are illustrative only and are not intended to be exclusive reasons for exceptional sentences." RCW 9.94A.390. If a downward departure pursuant to the fifth and sixth purposes of the statute is not applicable here (*i.e.*, to allow Tibbets an opportunity to improve himself and to make frugal use of the State's resources), it is hard to imagine a situation where they would be, and their presence in the statute would be superfluous. Under the facts of this case, these reasons

are adequate considerations to justify a downward departure from the standard range sentence. To affirm the trial court's decision sentencing Tibbets to a jail term when it has been proved that he is rehabilitated, working in society, employed, and married while responsibly raising a family would frustrate the goals of the SRA.[2]

The case is remanded to the sentencing court for proceedings consistent with this opinion.

KENNEDY, J., concurs.

FORREST, J. (dissenting) — The trial court believed that on the facts before it the requested sentence was socially desirable, but correctly recognized that it is for the Legislature to set sentencing policy for drug offenders and for the judiciary to evenhandedly implement that policy. In my view, the majority's holding that the requested exceptional sentence downward with treatment and minor jail time would be proper is totally contrary to the plain policy of the Sentencing Reform Act of 1981 (SRA) and the holdings of the Washington courts.

The majority relies on two of the statements of purpose in RCW 9.94A.010 to authorize an exceptional sentence in this case:

> (5) Offer the offender an opportunity to improve him or herself; and
> (6) Make frugal use of the state's resources.

(Italics omitted.) Majority, at 96. Neither is appropriate.[3] In the first place, in my view, the "Purpose" section of the SRA, RCW 9.94A.010, is a preface to the entire SRA sentencing

---

[2]We also note that there is no authority supporting the trial court's finding that departure is warranted only if objective factors common to the crime (as opposed to subjective factors relative to a particular defendant) are present. In fact, the statutory authority (RCW 9.94A.390) and the federal authority (*e.g.*, *Rogers*) are inapposite, and the former clearly states that the factors listed are not exclusive.

[3]Similar claims were rejected in *State v. Hutsell*, 120 Wn.2d 913, 923, 845 P.2d 1325 (1993), albeit on somewhat different facts.

scheme as a whole and is not to be imparted subsection by subsection into the exceptional sentence provisions of the act.

> The Legislature has stated that the sentencing reform act was designed to promote several significant interests, including protection of the public, the need for rehabilitation, and the need to make frugal use of state resources. *See* RCW 9.94A-.010(4), (5), (6). The presumptive sentence ranges established for each crime represent the legislative judgment as to how these interests shall best be accommodated. *See* D. Boerner, [*Sentencing in Washington*] § 2.5(b), (c), (d) [(1985)]. The trial court's subjective determination that these ranges are unwise, or that they do not adequately advance the above goals, is not a substantial and compelling reason justifying a departure.

*State v. Pascal*, 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987).[4]

If the Legislature had wanted either making frugal use of the State's resources or offering offenders an opportunity for improvement to be grounds for granting an exceptional sentence downward, these factors would have been set forth among the mitigating circumstances in RCW 9.94A.390. It is true the list of mitigating circumstances is not exclusive, but elementary rules of statutory construction require that other reasons for exceptional sentences should be of the same general nature and character as those specifically listed. The majority's grounds constitute a major policy decision of a totally different quality and generality than the listed mitigating circumstances which relate to the circumstances of the particular crime.

The majority's reliance on purposes (5) and (6) to justify an exceptional sentence downward is also directly contradictory to purpose (3): "Be commensurate with the punishment imposed on others committing similar offenses". RCW 9.94A-.010(3). Under the majority's view, Tibbets will receive a radically different sentence than other first-time drug offenders. This consequence strongly supports my view that the "Purpose" section cannot be directly interpreted as mitigating circumstances.

---

[4]This statement was cited with approval in *State v. Allert*, 117 Wn.2d 156, 169, 815 P.2d 752 (1991).

Furthermore, reliance on frugal use of the State's resources would produce a totally incoherent sentencing policy because in every case from second degree burglary to first degree murder, less prison time would cost the State less money, which seems to be the majority's interpretation of "frugal use of the state's resources." Additionally, Tibbets's opportunity to improve himself in this case came prior to sentencing, not afterward, and was not granted by a judge as part of the sentencing hearing. The consequence of the majority's holding is to establish presentence rehabilitation as a mitigating circumstance where rehabilitation was the choice of the defendant and not the order of the court. This is flatly contradictory to announced legislative policy. Indeed, the Legislature has explicitly stated its policy statement for sentencing guidelines:

> The sentencing guidelines and prosecuting standards apply equally to offenders in all parts of the state, without discrimination as to *any element* that does not relate to the crime or the previous record of the defendant.

(Italics mine.) RCW 9.94A.340.

A review of the mitigating factors in RCW 9.94A.390 shows that all relate to the nature of the crime and the degree of the defendant's participation, and none to whether the defendant is otherwise a good or bad person or a good or bad risk for treatment.[5] The majority makes no effort to minimize the

---

[5]"The mitigating circumstances enumerated in RCW 9.94A.390 represent failed defenses. As one commentator explains:

"The Guidelines contain a number of mitigating factors applicable in situations where circumstances exist which tend to establish defenses to criminal liability but fail. In all these situations, if the defense were established, the conduct would be justified or excused, and thus would not constitute a crime at all. The inclusion of these factors as mitigating factors recognizes that there will be situations in which a particular legal defense is not fully established, but where the circumstances that led to the crime, even though falling short of establishing a legal defense, justify distinguishing the conduct from that involved where those circumstances were not present. Allowing variations from the presumptive sentence range where factors exist which distinguish the blameworthiness of a particular defendant's conduct from that normally present in that crime is wholly consistent with the underlying principle. Certainly the fact that the substantive law treats these circumstances as complete

defendant's participation in the crime under any of the enumerated mitigating circumstances or any circumstance by analogy thereto. The Legislature has determined that a $20 sale of a rock of cocaine carries the standard range of 21 to 27 months. Tibbets was the middleman in a $3,000 transaction. The fact that the crime is a first offense is not a mitigating factor because that factor is reflected in the zero offender score. Further, the Legislature has specifically provided that the first-time offender option is not available to drug offenders.[6]

Apparently what drives the majority's holding is that this defendant has done just what society would like to see him do in turning his life around and that it would be better social policy to build on that than to send him to prison. I agree that such would be better policy,[7] but the Legislature has decided otherwise. During the most recent session, the Legislature considered amendments to the SRA to permit more flexible sentencing in cases such as this but took no action. It is not for the courts to enact a new sentencing

---

defenses establishes the legitimacy of their use in determining relative degrees of blameworthiness for purposes of imposing punishment.
"(Footnote omitted.) D. Boerner, *Sentencing in Washington* 9-23 (1985)." *State v. Hutsell*, 120 Wn.2d at 921.

[6] 'First-time offender' means any person who is convicted of a felony . . . (ii) that is not the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance classified in schedule I or II . . .." RCW 9.94A.-030(20)(a).

[7] "We can empathize with judges who feel frustration with the sentencing options available. In this case the judge stated 'I think we are letting ourselves get too impoverished by the options we choose to deal with serious and complex problems of criminal law violations in relation to longstanding addictions. I just think we have to try some of these other things.' This view is supported by a number of the materials cited by Harper in his brief. However, no matter how persuasive those arguments may be as a matter of policy, they must be addressed to the Legislature and not to the courts. As was the case in dealing with sex offenders, when the Legislature is persuaded that drug treatment is desirable it will affirmatively authorize such sentencing. Our responsibility is to apply the SRA as written." (Footnote omitted.) *State v. Harper*, 62 Wn. App. 69, 78-79, 813 P.2d 593 (1991), *review denied*, 118 Wn.2d 1017 (1992), *cited with approval in State v. Hutsell*, 120 Wn.2d at 924.

policy for drug offenders under the guise of interpreting the mitigating circumstances established in RCW 9.94A.390.

The majority cites no Washington authority supporting such a sentence, although exceptional sentences downward have frequently been before the appellate courts. In my view, such a sentence is contradictory to the rationale of the following cases, among others: *State v. Hutsell*, 120 Wn.2d 913, 845 P.2d 1325 (1993); *State v. Pennington*, 112 Wn.2d 606, 772 P.2d 1009 (1989); *State v. Harper*, 62 Wn. App. 69, 813 P.2d 593 (1991), *review denied*, 118 Wn.2d 1017 (1992).

Another reason I would be reluctant to authorize the trial court to impose the sentence requested by Tibbets on this record is the delay in charging. The offense was committed on July 27, 1989, the defendant immediately confessed and cooperated with the officers, yet was not charged until May 30, 1991. Obviously, it was this delay that made it possible for Tibbets to pursue his treatment program, turn his life around, and make the strong showing to the trial court which the majority finds would justify an exceptional sentence downward. There may be a reasonable explanation for the delay, and admittedly my concerns are speculative at this point. Nonetheless, there is no explanation in the record and the delay cannot be justified under any need to gather evidence. Tibbets received an opportunity not generally available to defendants. The majority's approval of this sentence is a wide-open invitation for drug defendants to attempt to negotiate a long delay in charging with the expectation of presenting themselves in a similar favorable posture when the time comes for sentencing. There are good arguments for such a policy. Indeed, very similar concerns underlie the long-term Washington practice of deferred and suspended sentences. However, the SRA outlawed such sentences. In my view, it would be totally inconsistent with the SRA's purpose of providing equal treatment for similarly situated defendants to permit individualized extrajudicial determinations that some defendants are entitled to a period to estab-

lish rehabilitation while others are not. Such a result plainly raises equal protection concerns. As I have stated, the record is silent and there may be a reasonable explanation for the delay but, even if I were persuaded that the trial court had the authority to impose the sentence requested, I would want the delay justified and explained on the record.

Review granted and reversed at 123 Wn.2d 250 (1994).