[Nos. 29783-0-I; 29740-6-I.   Division One.   July 19, 1993.]

THE STATE OF WASHINGTON, *Appellant,* v. JAMES MAURICE
ALEXANDER, ET AL, *Respondents.*

*Norm Maleng, Prosecuting Attorney,* and *Timothy Bradshaw, Deputy,* for appellant.

*Helen Anderson* of *Washington Appellate Defender Association; Jeff Ellis* of *The Defender Association,* for respondents.

FORREST, J. — The State appeals the exceptional sentences of Cesar Villela and James Alexander, contending the record does not support the findings, the findings do not

present substantial and compelling reasons to depart from the standard range sentence, and the sentences are clearly too lenient. We reverse and remand for resentencing.

On June 26, 1991, Seattle Police Officer Ceja was working undercover in a narcotics buy/bust operation in the 1500 block of Second Avenue, Seattle, Washington. Officer Ceja approached James Alexander; Alexander asked Ceja if he wanted some "coca" (cocaine). Officer Ceja said yes, "how about a viente?", which is $20 worth of cocaine. Alexander led Officer Ceja to a donut shop in the area, then walked around some more before Alexander contacted Cesar Leal Villela. Officer Ceja attempted to give $20 of police department buy money to Villela, but Alexander intercepted it. As Alexander led Officer Ceja and Villela down the street, Alexander gave Villela $15 of the buy money, and Villela gave Alexander a bindle of cocaine. Alexander passed the cocaine to Officer Ceja, who then signaled his partners that a buy had been completed. Alexander and Villela were arrested and each charged with one count of delivery of a controlled substance in contravention of RCW 69.50.401(a)(1)(i). Alexander had $5 of the buy money in his possession when arrested; Villela had $15 of the buy money and an additional $5. Neither defendant had any drugs in his possession.

The bindle was tested by the Washington State Crime Laboratory. The initial measurement showed the substance weighed .03 grams, and contained cocaine. The sample was too small to remeasure.

A jury convicted Villela and Alexander as charged. Each defendant was sentenced below the standard range.

The trial judge based Villela's exceptional sentence on his low level of involvement and sophistication, the minute amount of controlled substance involved and the lack of any plan by Villela to get involved in a drug transaction. The standard range sentence for Villela was 21 to 27 months; he was sentenced to 11 months of confinement.

Alexander's standard range sentence was 36 to 48 months, because of a prior offense. The trial judge found the amount of controlled substance was "extraordinarily small", and

Alexander was only a peripheral participant in the drug hierarchy. On these bases, Alexander was sentenced to 18 months' confinement.

The State appeals from these exceptional entences below the standard range.

*Did the trial court err in concluding "substantial and compelling" reasons existed to sentence Villela and Alexander to terms of confinement below the standard range?*

The Sentencing Reform Act of 1981 (SRA) allows a sentencing court to impose a sentence outside the standard range "if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). Appellate review of exceptional sentences is governed by RCW 9.94A.210(4), which provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

■ To reverse the exceptional sentences, the panel must determine that

> as a matter of law, the stated reasons do not justify the exceptional sentence; *or* . . . under the "abuse of discretion" standard, the sentence imposed is clearly excessive or too lenient.

*State v. Hutsell*, 120 Wn.2d 913, 916, 845 P.2d 1325 (1993); RCW 9.94A.210(4).

■ The State challenges the sentences imposed contending that the judge's findings are clearly erroneous, do not justify an exceptional sentence, and that the sentence is clearly too lenient. However, the State has not provided a transcript of the trial which was the basis for the trial court's factual findings.

> A party should arrange for the transcription of only those portions of the verbatim report of proceedings necessary to present the issues raised on review. If the party seeking review intends to urge that a verdict or finding of fact is not supported

by the evidence, the party should include in the record all evidence relevant to the disputed verdict or finding.

RAP 9.2(b).

The "evidence relevant" to the disputed findings of fact would be found in the verbatim report of proceedings of the trial and sentencing proceedings.[1] The State has failed to comply with RAP 9.2(b) by failing to provide those relevant parts of the trial record. "The appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue." *In re Marriage of Haugh*, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). Accordingly, we accept the findings as verities on appeal.[2]

In support of Villela's exceptional sentence, the trial judge entered the following findings of fact:

1. The amount of controlled substance in this transaction was extraordinarily small. Testimony from the State forensic scientist indicated that upon initial measurement it weighed .03 grams and that upon subsequent examination the quantity was too small to measure.
2. Mr. Villela appears to have been brought in to this transaction by circumstance. At the time of the transaction he was passing by and was contacted by Mr. Alexander, co-defendant. He was in possession of a small quantity of cocaine and nothing else. At the time of his arrest he did not possess any cocaine or money beyond $15.00 of buy money and an additional $5.00 bill. These factors indicate a low level of sophistication and peripheral participation in the drug hierarchy.
3. There was no evidence during the trial of any plan, collusion or even any acquaintance between Mr. Alexander and Mr. Villela prior to the transaction, nor was there any evidence of any commercial agreements between them.

In support of Alexander's exceptional sentence, the trial judge entered the following findings of fact:

1. The amount of controlled substance involved in this transaction was extraordinarily small. Testimony from the State forensic scientist indicated that upon initial measurement it weighed .03 grams and that upon subsequent examination the quantity was too small to measure.

---

[1]While the transcript of the sentencing hearing is before the court, there is no factual information as to the crime or any challenge to the court's factual findings.

[2]*Morris v. Woodside*, 101 Wn.2d 812, 815, 682 P.2d 905 (1984).

2. Although Mr. Alexander was in the area of the transaction and he made initial contact with the undercover buy officer, when arrested he was not in possession of any controlled substance or any money other than the $5.00 received in this transaction. These factors indicate a low level of sophistication and peripheral participation in the drug hierarchy.

3. There was no evidence during the trial of any collusion between Mr. Alexander and Mr. Villela prior to the transaction, nor was there evidence of any commercial agreements between them.

# I
## SMALL QUANTITY

■ The court's first reason for a sentence below the standard range is set forth in conclusion of law 1 as follows:

RCW 9.94A.390(2) provides that quantities of drugs substantially greater than for personal use, a high degree of sophistication, or a high position in the drug hierarchy are justifications for an exceptional sentence above the sentence range. By logical corollary, a very small amount of drugs, a low degree of sophistication, and a very low position in the drug hierarchy are justifications for a sentence below the standard range.

No case has held that as a "logical corollary" of an aggravating factor there must be a mitigating factor created by the absence of facts that would establish the aggravating factor. On the contrary, when addressing this argument the courts have rejected it. "The lack of an aggravating circumstance does not create a mitigating circumstance." *State v. Armstrong,* 106 Wn.2d 547, 551, 723 P.2d 1111 (1986). The fact that there is "no mitigating factors, is *not* an aggravating factor, any more than the absence of aggravating factors creates a mitigating circumstance." *State v. Creekmore,* 55 Wn. App. 852, 863, 783 P.2d 1068 (1989), *review denied,* 114 Wn.2d 1020 (1990). A review of the aggravating factors plainly demonstrates that for many of them it would be impossible to rely on their absence, or their converse as a mitigating factor.[3] Plainly, there can be no such general, "logical corollary".

---

[3]None of the following could be seriously urged as mitigating factors: That only one person was a victim, that the defendant was not cruel to his victim, that the defendant was not in a position of trust, that the defendant was not a pharmacist or physician; the converse of each of these is specifically identified as an aggravating factor. RCW 9.94A.390(2)(c)(i), (2)(c)(iv), (2)(d)(vi).

■ Nor is there anything peculiar to the crime of delivery of a controlled substance which justifies such a rule. The Legislature plainly knows how to create classes of crimes measured objectively by quantity or amount as in theft.[4] In fact, specifically with regard to drugs, the Legislature has classified possession of marijuana as a misdemeanor or a felony dependent upon the quantity.[5] Indeed, the logical corollary of possession or delivery of drugs "substantially greater than for personal use" would be an amount too small for personal use (which might still justify a conviction), not an amount for personal use, even if "an extraordinarily small amount". The strong implication from the lack of any legislative provision of a lesser crime based on a small amount of controlled substance is reinforced by the "burn statute", RCW 69.50.401(c),[6] making it a crime to deliver even a harmless substance purporting to be a controlled substance. It would indeed be ironic that to deliver a harmless substance with no impact on the buyer's welfare would produce a standard range sentence, while delivery of a small amount of a real controlled substance, which does have

---

[4]"A person is guilty of theft in the first degree if he commits theft of:

"(a) Property or services which exceed(s) one thousand five hundred dollars in value . . .". RCW 9A.56.030.

"A person is guilty of theft in the second degree if he commits theft of:

"(a) Property or services which exceed(s) two hundred and fifty dollars in value, but does not exceed one thousand five hundred dollars in value . . .". RCW 9A.56-.040.

"A person is guilty of theft in the third degree if he commits theft of property or services which does not exceed two hundred and fifty dollars in value." RCW 9A.56.050.

[5]"[A]ny person found guilty of possession of forty grams or less of marihuana shall be guilty of a misdemeanor." RCW 69.50.401(e).

[6]"It is unlawful, except as authorized in this chapter . . . for any person to offer, arrange, or negotiate for the sale, gift, delivery, dispensing, distribution, or administration of a controlled substance to any person and then sell, give, deliver, dispense, distribute, or administer to that person any other liquid, substance, or material in lieu of such controlled substance. Any person who violates this subsection is guilty of a crime and upon conviction may be imprisoned for not more than five years, fined not more than ten thousand dollars, or both." RCW 69.50.401(c).

an adverse impact on the buyer, would be grounds for an exceptional sentence below the standard range.

■ Finally, the Legislature has specifically denied the first offender option to drug violations.[7] In view of this specific prohibition it would clearly frustrate legislative intent to permit sentences similar to first offender options merely because the quantity of drugs involved was small. The Legislature has declared an unequivocal strong public policy against all forms of drug dealing and provided severe penalties therefor. Whether this is the most desirable public policy or not is debatable, but it is for the Legislature to determine such policy, not the courts.

We hold as a matter of law that an "extraordinarily small" amount of a controlled substance is not a "substantial and compelling reason" to depart from the standard range sentence.

## II
## PURPOSES OF THE SRA

In conclusion of law 2[8] the court relied specifically on two statements of purpose of the SRA, RCW 9.94A.010[9] to support a sentence below the standard range.

---

[7]The definition of a "first-time offender" specifically excludes offenders with felony convictions for "manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance". RCW 9.94A.030(20)(a).

[8]"One of the main purposes of the Sentencing Reform Act is to ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history. RCW 9.94A.010(1). Another main purpose of the Sentencing Reform Act is to promote respect for the law by providing punishment which is just. RCW 9.94A.010(2). Given the small amount of controlled substance and the minimal degree and peripheral nature of involvement . . ., a sentence [below the standard range] in prison is proportionate to the seriousness of the offense involved in this case. . . . A sentence within the standard range would be disproportionate to the seriousness of the offense. A sentence within the standard range would appear unjust and excessively harsh and would not promote respect for law. It would not serve the purposes of the Sentencing Reform Act."

[9]The entire section reads as follows:
"(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history; [and]

(2) Promote respect for the law by providing punishment which is just[.]

RCW 9.94A.010(1)-(2).

■ ■ Neither constitutes a proper ground for finding a mitigating circumstance. The statement of purposes in RCW 9.94A.010 prefaces the SRA sentencing scheme as a whole. It is not to be imparted subsection by subsection into the exceptional sentence provision of the act, either to support mitigating or aggravating factors.

> The Legislature has stated that the sentencing reform act was designed to promote several significant interests, including protection of the public, the need for rehabilitation, and the need to make frugal use of state resources. *See* RCW 9.94A.010(4), (5), (6). The presumptive sentence ranges established for each crime represent the legislative judgment as to how these interests shall best be accommodated. *See* D. Boerner, § 2.5(b), (c), (d). The trial court's subjective determination that these ranges are unwise, or that they do not adequately advance the above goals, is not a substantial and compelling reason justifying a departure.

*State v. Pascal*, 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987).[10] If each judge is entitled to decide what punishment is "proportionate" for a criminal offense, it would vitiate the SRA scheme of determinate sentencing. Likewise, if each judge is entitled to determine what sentence is just and will promote "respect for the law" it would vitiate the entire basis of the act.

What is just and proportionate is primarily a legislative determination which underlies the elaborate sentencing grid and its resulting presumptive sentences. The SRA includes a limited discretion to exceed or go below the standard range

---

"(2) Promote respect for the law by providing punishment which is just;

"(3) Be commensurate with the punishment imposed on others committing similar offenses;

"(4) Protect the public;

"(5) Offer the offender an opportunity to improve him or herself; and

"(6) Make frugal use of the state's resources." RCW 9.94A.010.

[10]This statement is cited with approval in *State v. Allert*, 117 Wn.2d 156, 169, 815 P.2d 752 (1991).

when the facts of the defendant's commission of the crime distinguish it from other violations of the same statute, not when the defendant's personal history or characteristics differ from other violators.[11] Once a proper mitigating or aggravating factor is found, the statements of purpose may properly be considered in selecting a sentence. They do not in and of themselves constitute grounds to go outside the standard range. On these facts, RCW 9.94A.010(1) and (2) are not "substantial and compelling reasons" for a sentence outside the standard range.[12]

## III
### LOW SOPHISTICATION AND LOW POSITION IN HIERARCHY

One of the reasons given in conclusion of law 1 for the exceptional sentence was "low degree of sophistication, and a very low position in the drug hierarchy". Although factually treated as true for the purpose of this appeal, as a reason for the exceptional sentence it requires independent examination as a matter of law. For the reasons stated in section I, *supra*, this is not a ground for an exceptional sentence by logical corollary to the aggravating factors, RCW 9.94A.390(2). However, that does not preclude it as an adequate reason based on analogy to the statutory mitigating factors as developed by case law.

In *State v. Nelson*,[13] the Supreme Court approved a sentence below the standard range for the "bagman" in a first

---

[11]*State v. Estrella*, 115 Wn.2d 350, 798 P.2d 289 (1990). For a criticism of the *Estrella* approach, *see* Junker, *Guidelines Sentencing: The Washington Experience*, 25 U.C.D. L. Rev. 715, 744 (1991-1992).

[12]We recognize that a panel of this court in *State v. Friederich-Tibbets*, 70 Wn. App. 93, 853 P.2d 457 (1993), has held that RCW 9.94A.010, the statement of purposes, may constitute a "substantial and compelling reason" for an exceptional sentence. Specifically, the court relied on "(5) Offer the offender an opportunity to improve him or herself; and (6) Make frugal use of the state's resources." We are reluctant to disagree with another panel of this court, but for reasons stated in Judge Forrest's dissent, we find the holding unpersuasive and decline to follow it unless approved by the Supreme Court. *See State v. Hodges*, 70 Wn. App. 621, 855 P.2d 291 (1993) where another panel of this court likewise declined to follow the *Friederich-Tibbets* rationale.

[13]108 Wn.2d 491, 740 P.2d 835 (1987).

degree robbery. The court found there was no predisposition to commit the crime based on the fact that his codefendant primarily planned and organized the crime and carried the gun, and on the absence of any criminal history. As to Villela, the court found that:

> Mr. Villela appears to have been brought into this transaction by circumstance. At the time of the transaction he was passing by and was contacted by Mr. Alexander, co-defendant. He was in possession of a small quantity of cocaine and nothing else. At the time of his arrest he did not possess any cocaine or money beyond the $15.00 of buy money and an additional $5.00 bill. These factors indicate a low level of sophistication and peripheral participation in the drug hierarchy.

Finding of fact 2. Comparing the facts of the two cases, Mr. Villela shows even less predisposition to commit the offense than Mr. Nelson. Although the trial court did not specifically articulate this as a reason, it would certainly be justified by its factual findings.

Likewise, in *State v. Gaines,* 65 Wn. App. 790, 830 P.2d 367 (Grosse, C.J., concurring), *review granted,* 120 Wn.2d 1001 (1992), this court approved a sentence below the standard range in a prosecution for aiding delivery of a controlled substance.

As part of its justification, the trial court relied on the fact that "Gaines' participation in the drug delivery is distinguishable from the participation of others in similar crimes." *Gaines,* at 800. As the concurring opinion pointed out, this would support, although obviously not compel, the court's imposition of a sentence below the standard range.

> There is little doubt that the record would have permitted the trial court, by virtue of the mitigating circumstances attending the crime, to distinguish it from others within the same category, and thus to have properly imposed an exceptional sentence. RCW 9.94A.390 for example provides that the court in deviating from the standard sentence range may consider as mitigating factors the following:
>
>    (1) Mitigating Circumstances
>    (a) To a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident.
>
> . . . .
>    (c) The defendant committed the crime under duress, coercion, threat, or compulsion insufficient to constitute a com-

plete defense but which significantly affected his or her conduct.

. . . .

(f) The offense was principally accomplished by another person and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim.

The record here indicates that the participants in the offense were willing, that Gaines participated in the transaction in exchange for a "hit" of cocaine, and that Gaines was a mere conduit in a transaction principally consummated between two other individuals, the person who delivered the controlled substance and the undercover agent who received it.

*Gaines*, at 804-05.

Gaines establishes that a minimal involvement may be grounds for an exceptional sentence.

Finally, while the facts as found by the trial court clearly do not establish an entrapment defense, they also clearly *tend* to do so. If Alexander had not approached him, Villela probably would have gone on his way and used his minimal amount of cocaine personally. The court specifically found there was no prior acquaintance or collaboration between the two defendants. Professor Boerner, although relying heavily on failed defenses as an essential basis for mitigating circumstances,[14] rejects a failed entrapment defense for drug cases.[15] However,

---

[14]"The Guidelines contain a number of mitigating factors applicable in situations where circumstances exist which tend to establish defenses to criminal liability but fail. In all these situations, if the defense were established, the conduct would be justified or excused, and thus would not constitute a crime at all. The inclusion of these factors as mitigating factors recognizes that there will be situations in which a particular legal defense is not fully established, but where the circumstances that led to the crime, even though falling short of establishing a legal defense, justify distinguishing the conduct from that involved where those circumstances were not present. Allowing variations from the presumptive sentence range where factors exist which distinguish the blameworthiness of a particular defendant's conduct from that normally present in that crime is wholly consistent with the underlying principle. Certainly the fact that the substantive law treats these circumstances as complete defenses establishes the legitimacy of their use in determining relative degrees of blameworthiness for purposes of imposing punishment." (Footnote omitted.) D. Boerner, *Sentencing in Washington* § 9.12(c) (1985).

[15]"To consider the failed defense of entrapment as a mitigating circumstance in all situations where it exists would justify reduced punishment in a significant number of cases which do not warrant such leniency. . . . These cases arise most

we find no case with such an unequivocal holding, nor is the policy reason to foreclose mitigating circumstances in all drug cases totally persuasive. An undercover buy of a kilo of cocaine would unequivocally demonstrate a drug dealer fully is predisposed to sell, and preclude the failed entrapment defense. Villela's .03-gram transaction, apparently by happenstance, and in the absence of other drugs or money, does not unequivocally identify him as having a predisposition to sell. The matter was not argued or briefed, so we do not rely on it for our decision; it is, however, a matter that the trial court may consider on remand.

The foregoing discussion is of no help to Alexander. His prior conviction negates any reliance on lack of predisposition as does his approach to the officer, even though the officer was plainly "looking". Although like Gaines, he was a "middleman", he was clearly the initiator of the transaction and the more involved of the two in this drug transaction. The court has failed to offer a substantial and compelling reason for an exceptional sentence for Alexander.

We remand both cases for resentencing. Alexander is to be sentenced within the standard range. We have found that two of the three reasons given by the trial court, the small amount of drugs, and SRA's statements of purpose, do not constitute substantial and compelling reasons for finding a mitigating circumstance. Without those reasons it is unclear whether the trial court would consider its factual findings

---

frequently in enforcement of the drug laws. In the typical situation, a police officer or agent impersonates a drug buyer and solicits those believed to be willing to sell illegal drugs. Since the criminal design for that particular crime 'originated in the mind of the law enforcement officials' and the seller arguably had not intended to make that particular sale until induced by the solicitation, the first element of the entrapment defense is present. This situation, however, is present in essentially every case of delivery of controlled substances, since, as in all victimless crimes, had a police agent not been involved the occurrence never would have come to official attention. To allow some but not all of the elements of the entrapment defense to constitute a mitigating circumstance sufficient to justify an exceptional sentence would be contrary to the concept of allowing exceptions only when exceptional circumstances exist, since this circumstance describes the typical delivery of a controlled substance case." D. Boerner, *Sentencing in Washington* § 9.12(c)(4) (1985).

with respect to Villela's sentence justification for a mitigating circumstance. Accordingly, we remand for resentencing.[16] The remand is not for further testimony, but to consider, as a matter of law, whether the factual findings provide an adequate reason for an exceptional sentence consistent with the foregoing discussion.

COLEMAN and AGID, JJ., concur.

Reconsideration denied October 1, 1993.

Review granted at 123 Wn.2d 1001 (1994).

---

[16]Although we do not find persuasive the State's claim that Villela's sentence is too lenient, in view of the remand we need not address the issue.