[No. 30935-8-I.   Division One.   May 9, 1994.]

THE STATE OF WASHINGTON, *Appellant*, v. ANGELA DEBORAH FREITAG, *Respondent*.

---

[3]The calculations were 9,894 kwh = (1,242 sq. ft./1,550 sq. ft. x 11,950 kwh) and 10,003 kwh = (1,242 sq. ft./1,500 sq. ft. x 12,082 kwh).

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* for appellant.

*James E. Lobsenz* and *Carney, Badley, Smith & Spellman,* for respondent.

KENNEDY, J. — The State appeals an exceptional sentence below the standard range following Angela Freitag's plea of guilty to a charge of vehicular assault. The State contends that the reasons given by the sentencing judge are not substantial and compelling and that the sentence given is clearly too lenient. We affirm.[1]

I

On August 14, 1991, at 3 a.m., Ms. Freitag, whose blood alcohol level was .16, drove an uninsured Porsche[2] through a red light and broadsided a vehicle driven by Quoc Cuong Ly. Mr. Ly's neck was broken in the collision. Ms. Freitag was not injured.

Ms. Freitag was charged with vehicular assault in violation of RCW 46.61.522, a seriousness level 4 offense, to which she pleaded guilty. Her offender score was 0. Her presumptive sentence was 3 to 9 months. The Honorable Robert S. Lasnik of the King County Superior Court imposed an exceptional sentence of 90 days in the county jail with 89 of those days converted to 712 hours of community service.[3] The judge

---

[1]Accordingly, we need not reach Ms. Freitag's contention that, her exceptional sentence having been served in full during the pendency of this appeal, resentencing within the standard range would constitute double jeopardy.

[2]The record does not reflect who owned the uninsured Porsche. Ms. Freitag, who lived with her father in Washington, D.C., had flown to Seattle on August 13 for the purpose of attending a friend's wedding.

[3]Although the duration of Ms. Freitag's sentence is 90 days, the low end of the standard range, this is an exceptional sentence because vehicular assault is

specified that one-half of the community service was to be performed at a free legal clinic and one-half was to be performed at a health care facility providing rehabilitation to seriously injured accident victims. The judge also ordered full restitution to Mr. Ly, and Ms. Freitag was placed on community supervision.

## II

At the time of committing this vehicular assault, Ms. Freitag was a 23-year-old honors student attending law school at Georgetown University in Washington, D.C. She had seldom drunk more than a glass or two of wine at any one time in her entire life. Even at parties where alcoholic beverages were freely available, Ms. Freitag often drank nothing at all.[4] She had lived a law-abiding life of civic and social responsibility. During summer vacations she had worked as an unpaid volunteer for various charitable organizations, *e.g.*, for a free medical clinic in Mexico and a social services clinic for the poor in Appalachia. During school terms she had helped to prepare and deliver Meals-on-Wheels to the elderly and meals at Thanksgiving to the homeless. She not only had no counted criminal history whatsoever but also she had no juvenile record, no misdemeanors and no civil infractions — she had never received so much as a minor traffic ticket. A few hours before the accident, Ms. Freitag had flown cross-country from the East Coast to Seattle in order to participate in a friend's wedding. With too little sleep, and following a particularly stressful period in her life, Ms. Freitag attended the wedding rehearsal dinner. There, she participated in a series of ritual toasts to the bride and groom. Without realizing that she had

---

defined as a violent offense. *See* former RCW 9.94A.030(33)(a). Conversion of jail time to community service is limited to offenders convicted of nonviolent offenses, and is specifically limited to 30 days (240 hours). *See* RCW 9.94A.380. Because vehicular assault is defined as a violent offense, Ms. Freitag also could not receive a first offender option. *See* RCW 9.94A.120(5); RCW 9.94A.030(2)(a)(i). Judge Lasnik was fully aware that he was imposing an exceptional sentence.

[4]An alcohol counselor confirmed to the court that Ms. Freitag had little by way of drinking experience and no drinking problem.

drunk too much wine and that she was unfit to drive, Ms. Freitag did drive, ran the red light and crashed into Mr. Ly.

Once she sobered up, Ms. Freitag was horrified, grief stricken and filled with shame at the terrible consequences to Mr. Ly of her unthinking act. Well before her sentencing hearing, she contacted Mr. Ly's insurance company. Her only way of paying restitution for Mr. Ly's injuries was to pledge a substantial share of her future earnings. Ms. Freitag had already signed such a pledge by the time of the sentencing hearing.[5] Ms. Freitag also expressed her desire to the trial court to make amends for her offense, not only to Mr. Ly and his insurer, but also to society.

The Department of Corrections filed a presentence report in which the community corrections officer confirmed that "it was totally out of character for Ms. Freitag to drink until intoxication." Clerk's Papers (CP), at 115. The officer recommended either the low end of the standard range converted to work release or the low end of the standard range converted to community service.

The State presented no controverting evidence. The State recommended 5 months of incarceration, 12 months of community supervision and restitution.

### III

Judge Lasnik entered the following findings of fact in support of the exceptional sentence. It is clear from the record that these findings were intended to be read as a whole, and not in isolation one from the other:

> 2. The defendant has no prior criminal history, not just in the statutory sense of the word, but in the real life sense of the word. She has no prior offenses that have "washed out", no mis-

---

[5]The record reflects that Mr. Ly, most fortunately for him, was expected to make a full recovery. His attorney appeared at the sentencing hearing and Mr. Ly wrote a letter to the court. Mr. Ly expressed no interest in additional jail time for Ms. Freitag. He requested the opportunity to present evidence at the restitution hearing, which was scheduled for a later date, as to the amount of his economic losses which were not covered by his automobile insurance. Ms. Freitag expressed her intention of making full restitution both to Mr. Ly and to his insurance carrier. The trial court gave Ms. Freitag 10 years to fulfill these commitments.

demeanor convictions busted down and no felonies. The defendant has led a crime-free life.

3. The defendant has led a life where she has shown a concern for people beyond that normally shown by others. Her voluntary efforts made on behalf of others positively reflects on her character and the quality of life she has led.

. . . .

5. The sentence imposed by the Court will enable the defendant to improve herself by service to the community and makes frugal use of state and local resources by alleviating the problem of jail overcrowding faced by local government.

6. The public will be protected because the defendant does not pose a threat to reoffend . . ..

7. The Court acknowledges that there is nothing mitigating about the crime itself, which involved a blood alcohol level of .16 and serious injuries to the victim[.][6]

## IV

The State of Washington now appeals, arguing first that there are no substantial and compelling reasons justifying an exceptional sentence as required by RCW 9.94A.120(2).[7] We review the sufficiency of the sentencing judge's reasons as a matter of law. *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). *See also State v. Estrella*, 115 Wn.2d 350, 357, 798 P.2d 289 (1990) (in determining whether sentencing judge's reasons are substantial and compelling, appellate court will weigh reasons given against the purposes of the Sentencing Reform Act of 1981 (SRA)).

---

[6]Labeled as findings of fact but more properly viewed as conclusions of law were the following additional "findings":

"4. The Court believes that there are meaningful punishments that should exist in the law beyond a jail or prison term. There are ways to impose real sanctions on offenders in society other than putting them in jail and the Court acknowledges that restitution and community service hours provide such sanctions.

". . . .

"6. . . . [T]he sentence helps further the purpose of the Sentencing Reform Act in that the punishment is proportional to the [Defendant's] criminal history in the sense that defendant is totally lacking in criminal history, not just "counted" criminal history."

[7]The factual support for the court's findings is not challenged. An appellate court may not reverse an exceptional sentence unless it finds (1) either that the sentencing judge's reasons are not supported by the record or that the reasons do not justify an exceptional sentence or (2) that the sentence imposed is clearly excessive or clearly too lenient. *See* RCW 9.94A.210(4)(a), (b).

The State relies on *State v. Pascal*, 108 Wn.2d 125, 137, 736 P.2d 1065 (1987) (citing *State v. Nordby*, 106 Wn.2d at 518 n.4), wherein our Supreme Court stated that

> the defendant's criminal history . . . is one of the components used to compute the presumptive range for an offense under the sentencing reform act. Therefore, criminal history may not be counted again as a mitigating circumstance to justify departure from the range.

*See also State v. Rogers*, 112 Wn.2d 180, 183, 770 P.2d 180 (1989) (fact that " 'defendant has never before been convicted of a crime' " may not be used as a mitigating factor because criminal history is one of the components used to compute the standard range (quoting *State v. Pascal*, 108 Wn.2d at 137)); *State v. Allert*, 117 Wn.2d 156, 168-69, 815 P.2d 752 (1991) (trial court's finding that defendant not likely to reoffend supported by expert opinions and lack of prior criminal history, but lack of criminal history is not a substantial and compelling reason for an exceptional sentence (citing *State v. Pascal*, 108 Wn.2d at 137)). Thus, the State concludes, Ms. Freitag's lack of any criminal history whatsoever is not a substantial and compelling reason as a matter of law.

Ms. Freitag relies on *State v. Nelson*, 108 Wn.2d 491, 740 P.2d 835 (1987) wherein our Supreme Court stated that:

> Nelson had not only a zero offender score under the SRA scoring grid, but . . . he had a *complete* absence of police contacts, a factor not already accounted for under the SRA. The complete lack of misdemeanors, beyond the absence of felonies that renders a zero offender score (*see* RCW 9.94A.360; *see also* Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* I-5 (1984)) is appropriate for the sentencing judge to consider, in that it supports a finding that the defendant lacked the predisposition to commit the crimes. The position is consistent with the goal of the SRA, which is to treat people equally, considering their crimes and past history. *If the person who has no record at all is to be on par with the person who has an extensive misdemeanor record, then this equality is lacking. See generally* D. Boerner, *Sentencing in Washington* § 2.5(a)(1985). The comments of the Sentencing Guidelines Commission show that the drafters of the statute realized that such limited use of a defendant's misdemeanor history was appropriate:

> The Commission anticipates that in some instances an offender's history of misdemeanors may be used by the court in selecting a sentence within the standard range *or in departing from the range to administer an exceptional sentence.*

(Citation omitted. Some italics ours.) *Nelson*, at 498 (quoting Washington Sentencing Guidelines Comm'n, *Implementation Manual* II-32 (1984)). Thus, Ms. Freitag contends, Judge Lasnik properly relied on her *complete* absence of any police contacts whatsoever, including her lack of so much as even a minor traffic ticket, in selecting a sentence outside the standard range.

■ Reading *Pascal* and its progeny and *Nelson* together, we can only conclude that all "0" offender scores are not created equal. That part of Ms. Freitag's lack of any criminal history which cannot be relied on as a mitigating factor is her lack of any *counted* criminal history. A defendant's counted criminal history is that which goes into the offender score and thus becomes one of the components used to compute the standard range.

For an offender whose current offense is vehicular assault, counted criminal history consists of: any prior vehicular assaults or vehicular homicides, which are counted at 2 points each; any prior felonies of any other kind, which are counted at 1 point each; and any prior "serious traffic offenses", [8] which are counted at 1 point each if committed as an adult; one-half point each if committed as a juvenile. *See* RCW 9.94A.360(12). *But see also* RCW 9.94A.360(2), which provides that "serious traffic offenses" are *not* included in the offender score if the offender has spent 5 years in the community without committing any serious traffic or felony offenses.

That Ms. Freitag had no *counted* offenses on her record is not a mitigating factor, but such a double counting is not what Judge Lasnik did in this case. Instead, he recognized, as did our Supreme Court in *State v. Nelson*, 108 Wn.2d at 498, that Ms. Freitag's "0" offender score did not reflect her *complete*

---

[8]"Serious traffic offenses" are defined to be: DWI and actual physical control; reckless driving; hit and run, attended vehicle. *See* RCW 9.94A.030(26)(a).

lack of any police contacts whatsoever, a fact not otherwise accounted for under the SRA. Thus, the principles of *Nordby, Pascal, Rogers* and *Allert* were not violated here, and we so hold. This does not end our inquiry, however, for the State goes on to argue that the *complete* absence of any police contacts whatsoever is only relevant in a case such as *Nelson*, wherein the lack of any misdemeanor record supported the trial court's finding of a statutory mitigating factor, the defendant's lack of any predisposition to commit armed robbery combined with the fact that defendant Nelson was induced by someone else to act as a "bagman" for the robbery. *See Nelson*, 108 Wn.2d at 496, 498-99; RCW 9.94A.390(1)(d) (It is a mitigating circumstance if the defendant, with no predisposition to do so, was induced by others to participate in the crime.). We disagree with such a narrow interpretation of *Nelson*.

It would seem an exceedingly odd and strained interpretation of *Nelson* to limit the significance of an offender's lack of any uncounted criminal history, where that factor supports a finding of his or her lack of any predisposition to commit not only the current offense but also any other type of offense whatsoever (including even a minor traffic offense), to the so-called "failed entrapment defense"[9] cases. In *Nelson*, although it was unrefuted that the plan to commit the armed robbery did not originate with Nelson, and it was also clear that Nelson was not predisposed to commit armed robbery or any other type of crime, it would appear that he was not particularly difficult to "induce", in that he went along with the idea of serving as "bagman" during the robbery readily enough, because he needed money to support his family and his drug habit. *Nelson*, 108 Wn.2d at 496-97.

We believe that the significance of *Nelson* lies not so much in the "inducement" prong of Nelson's so-called failed entrapment defense as in Nelson's lack of predisposition as illustrated by his theretofore totally and completely crime-free

---

[9]*See* David Boerner, *Sentencing in Washington* § 9.12(c), at 9-23, 9-24; § 9.12(c)(4), at 9-29, 9-30 (1985) (discussing various common law and statutory "failed defenses" included among statutory mitigating factors of SRA).

life.[10] This interpretation of *Nelson* is supported by the Supreme Court's decision in *State v. McAlpin*, 108 Wn.2d 458, 740 P.2d 824 (1987), handed down on the same day as *Nelson*.[11] *McAlpin* is the corollary of *Nelson*, in that it affirms an exceptional sentence *upward* based on the defendant's uncounted lengthy history of juvenile felony adjudications committed before the defendant's 15th birthday:

> One of the overriding purposes of the sentencing reform act is to ensure that sentences are proportionate to the seriousness of the crime committed and the defendant's criminal history. RCW 9.94A.010(1). This purpose would be frustrated if a court were required to blind itself to a significant portion of a defendant's juvenile criminal record. . . . Such an interpretation of the sentencing reform act would operate to erase from the record the true circumstances of an offender's past, thus precluding the trial court from evaluating what might be one of the most significant aspects of an offender's personality. . . . Society is entitled to view the long-term repeater of crimes from an early age as a greater threat and as requiring longer institutional supervision than one whose criminal proclivities are not as deeply ingrained. The court also correctly concluded that the defendant here would not be doubly penalized if these crimes were considered in imposing an exceptional sentence, since they are not part of the standard range calculation.
>
> The fact that pre-age-15 felonies are not among the SRA's listed "aggravating circumstances" (*see* RCW 9.94A.390) is not determinative. The SRA explicitly states that the listed [aggravating and mitigating] factors are illustrative only and not exclusive.

*McAlpin*, 108 Wn.2d at 464-65. We believe that *McAlpin* and *Nelson* stand for the same principle of law as it is to be

---

[10]It would otherwise be difficult to reconcile *Nelson* with the true spirit of the SRA as a whole and of the statutory mitigating factors in particular. As Professor Boerner points out, to consider the failed defense of entrapment as a mitigating circumstance in all situations where some but not all of the elements of entrapment are arguably present, would be contrary to the concept of allowing exceptional sentences only where exceptional circumstances exist. David Boerner, *Sentencing in Washington* § 9.12(c)(4), at 9-29 (1985). To allow an exceptional sentence downward to *any* defendant who was not in on the initial planning of a crime and who never would have come up with the idea of his or her own volition, but who went along readily enough for motives of his or her own, would soon engulf the statutory goal of equal treatment and just deserts.

[11]*Nelson* and *McAlpin* were filed on July 16 and 23, 1987, respectively.

applied in exceptional sentence cases, both exceptionals "up" and exceptionals "down".

It is also instructive to compare Ms. Freitag with one Theresa Roberts, the defendant and appellant in *State v. Roberts*, 55 Wn. App. 573, 779 P.2d 732, *review denied*, 113 Wn.2d 1026 (1989). Ms. Roberts stood convicted of two counts of vehicular homicide after she drank alcoholic beverages to excess, drove her vehicle in an extremely aggressive and hostile manner, and collided with another car, killing its two occupants. Ms. Roberts' offender score did not reflect the three negligent driving convictions she had received within 15 months of the fatal crash or her callous disregard of the effects of alcohol abuse on her driving. Those effects were well known to Ms. Roberts, in that at least two of the three uncounted negligent driving convictions arose from collisions after Ms. Roberts had been drinking and she also had previously had the benefit of more than one treatment program for substance abuse.

Ms. Roberts' presumptive sentence was 31 to 41 months. The trial court sentenced her to an exceptional sentence of 120 months, the statutory maximum. *Roberts*, 55 Wn. App. at 577. This court affirmed, noting that the fact that the Legislature had provided that convictions for certain serious driving offenses would be included in the offender score of persons convicted of vehicular homicide and vehicular assault did not mean that the Legislature intended to prevent the courts from considering other, uncounted misdemeanors as aggravating factors. This court specifically noted that Ms. Roberts' "three negligent driving convictions established a pattern of incidents in which Roberts lost control of her vehicle — similar to the current offense." *Roberts*, 55 Wn. App. at 579. Thus, Ms. Roberts' offender score did not reflect the full degree of her criminal culpability, indeed, of her predisposition to drink and then to drive.

Theresa Roberts represents one extreme on the scale of violent traffic offenders whose uncounted misdemeanor histories provide a substantial and compelling reason for departure from the standard range. Angela Freitag represents the

*opposite* extreme. Her "0" offender score does not reflect the full degree of her reduced criminal culpability, *i.e.*, of her lack of any predisposition to drink and drive or to commit any other type of criminal or traffic offense. Theresa Roberts and Angela Freitag were probably equally or almost equally as dangerous in terms of their driving on the dates of their respective offenses, but in terms of degree of criminal culpability, propensity to drink and drive, not to mention risk to reoffend, no reasonable person could argue that either of these drivers fits "the norm" of persons in her respective offender score category convicted of vehicular assault. The trial courts are simply not required to blind themselves to these kinds of distinctions.

Professor Boerner has said that, in adopting the SRA, the Legislature recognized that no predetermined sentencing scheme could accommodate every individual fact situation and that cases would arise in which a standard range sentence would produce results which are unacceptably harsh or unacceptably lenient, in light of the purposes of sentencing reform:

> The Legislature's challenge was to develop a method which allowed [the] necessary individualization in exceptional cases while ensuring consistency with the Legislature's articulation of the purposes for which punishment is to be imposed. *The need was for more than a process by which judges determined the legislative intent; what was needed was a process by which judges could determine what the Legislature would have intended had it considered a situation it plainly did not consider.*

(Footnote omitted. Italics ours.) David Boerner, *Sentencing in Washington* § 9.1, at 9-1 (1985).

■ The Legislature plainly did not count and therefore did not consider the presence or absence of most types of misdemeanor convictions in developing the sentencing grids. Instead, the decision of when, whether and to what extent to consider the presence or absence of *uncounted* offenses was deliberately left to the courts. *Nelson*, 108 Wn.2d at 498; Washington Sentencing Guidelines Comm'n, *Implementation Manual* II-32 (1984).

Reading *Nelson, McAlpin* and *Roberts* together, we conclude that in cases where the *complete* absence of criminal history, *i.e.,* of *uncounted* criminal history, reflects the total absence of predisposition to commit not only the current offense but any other type of crime whatsoever, a substantial and compelling reason exists for an exceptional sentence downward.[12] We can certainly conceive of offenders whose complete absence of any criminal history is *not* indicative of a lack of predisposition or any reduced degree of criminal culpability. We do not here state a rule whereby *any* first-time offender is entitled to one free violent crime, as it were, due to a complete lack of prior police contacts. We believe that our trial courts are well equipped to and experienced in distinguishing the "Theresa Roberts" from the "Angela Freitags" among violent offenders, in terms of their predispositions to commit crimes and in terms of criminal culpability. As our Supreme Court noted in *McAlpin*, 108 Wn.2d at 464-65, the trial courts are not precluded from evaluating these most significant aspects of an offender's personality. We add that, unless this is done on a case by case basis, the goals of the SRA cannot be realized. Instead, sentencing decisions could as easily be given over to a computer operated by the State.

Although Judge Lasnik did not use the actual words "reduced culpability" or "lack of predisposition to commit this or any other crime", such a finding is implicit in his findings regarding Ms. Freitag's life of caring and concern for the welfare of other people, together with his specific finding that Ms. Freitag does not pose a risk to reoffend. Ms. Freitag's lack of any significant degree of experience with drinking and lack of any predisposition to drink and drive or to commit any other type of traffic, misdemeanor or felony offense is fully supported by the record.

---

[12]The corollary of this holding applies to exceptional sentences upward and is well stated in *McAlpin* and *Roberts* and need not be restated here. *See also State v. Olive,* 47 Wn. App. 147, 152, 734 P.2d 36, *review denied,* 109 Wn.2d 1017 (1987); *State v. Ratliff,* 46 Wn. App. 325, 332-33, 730 P.2d 716 (1986), *review denied,* 108 Wn.2d 1002 (1987). We believe that fundamental principles of fairness require that this principle of law apply to exceptional sentences downward as well as exceptional sentences upward.

As we have previously noted, the Legislature specifically provided that even "serious traffic offenses" wash out from the offender scores of violent traffic offenders after 5 years. In the final analysis, it does not seem inconsistent with the purposes of the SRA for the trial courts to consider that traffic offenders who have *never* had a serious traffic offense or even a minor traffic infraction are likely to pose even less a threat to society than offenders who have only managed to stay out of trouble for 5 years, but who had very bad driving records before that. *Cf. McAlpin*, 108 Wn.2d at 464-65.

We also reject the State's contention that Judge Lasnik substituted his judgment of what the law ought to be for the Legislature's policy determinations of how best to accommodate the purposes of the SRA.[13] Although the words "[t]he court believes that there are meaningful punishments that should exist in the law beyond a jail or prison term" could, if read in isolation, imply an act of "judicial fiat" in the face of the Legislature's prerogative, it is clear from the content of the oral and written rulings as a whole that Judge Lasnik had no such intention. Instead, we believe that Judge Lasnik was merely voicing his conclusions of law (see footnote 6) in anticipation of the State's next contention on appeal, that the sentence here imposed was "clearly too lenient".

For all of these reasons, we hold that there were substantial and compelling reasons for an exceptional sentence downward in this case.

## V

The State also argues that Angela Freitag's sentence was clearly too lenient, in light of the paramount purpose of the SRA, which is punishment. *Cf. State v. Estrella*, 115 Wn.2d 350, 357, 798 P.2d 289 (1990) ("the paramount purpose of the SRA is punishment").

---

[13]*See State v. Allert*, 117 Wn.2d at 169 (citing *State v. Pascal*, 108 Wn.2d at 137): "[T]he trial court's subjective determination that [the presumptive] ranges are unwise or that they do not advance [the stated goals of the SRA, *see* RCW 9.94A.010] is not a reason justifying departure from the normal range, and the fact that the defendant may not pose a threat to the public is not a reason supportive of an exceptional sentence."

Whether a sentence is clearly too lenient is reviewed for abuse of discretion. *State v. Pascal*, 108 Wn.2d at 138. The State argues that, even if there are substantial and compelling reasons for an exceptional sentence downward, 1 day in jail and 89 days of community service is simply not punishment enough, especially for Ms. Freitag who, in light of her history of volunteering her services for the good of society, would likely perform 712 hours of community service in any given year without being ordered by a court to do so.

The State points to David Boerner, *Sentencing in Washington* § 4.6, at 4-10 (1985): "If a person would engage in the activity voluntarily, how can requiring it fit any definition of punishment?" But the State fails to cite Professor Boerner's proposed resolution of this inquiry. First, Ms. Freitag did not select her own community service. The sentencing judge selected it for her, stating as he did so:

> I . . . want those community service hours to be served half in a legal aid type setting, helping poor people with legal services, and the other half I would like to see served in a physical rehabilitation type center with victims of serious and debilitating accidents or injuries, to give the defendant an exposure to a part of life she probably would otherwise not be exposed to[.]

Court's oral ruling, CP, at 100-01. (See also CP, at 74. The court specifically incorporated its oral ruling into the findings of fact and conclusions of law).[14]

Second, as Professor Boerner points out:

> There is no limit on the amount of community service which could be ordered as a condition of an exceptional sentence. Such sentences must, however, be justified by the existence of substantial and compelling circumstances and are subject to substantive review on appeal. The very nature of an exceptional sentence presumes the existence of valid reasons for

---

[14]The State admits that the portion of the community service to be served in a physical rehabilitation center "might be considered punishment". Opening Br. of Appellant, at 19. We certainly agree. This is particularly so for a defendant who is already grief stricken and filled with shame and remorse, as was Ms. Freitag, and who sincerely wishes to make amends to society, as did Ms. Freitag. Ms. Freitag could scarcely look at such victims without remembering the terrible consequences of her own offense to Mr. Ly.

differential sentences and thus resolves issues of disparity and disproportionality.

David Boerner, *Sentencing in Washington* § 4.6, at 4-11 (1985). We fully agree.

■ As the Supreme Court pointed out in *State v. Nelson*, 108 Wn.2d at 501-04, in response to the State's argument in that case that 12 months in jail and 2 years of community service was clearly too lenient (Nelson's standard range sentence would have been 31 to 41 months of incarceration), in determining the length and conditions of an exceptional sentence the court must consider the purposes of the SRA, as stated in RCW 9.94A.010.[15] A sentence which includes community supervision (the same would hold true for community service) in lieu of jail time exerts a significant amount of state control over a defendant — less control than does jail time, but still, a significant amount of control. The trial court's discretionary decision of how to structure an exceptional sentence downward is somewhat analogous to the decision to impose probation under the previous, indeterminate sentencing system. Factors to be considered may include the defendant's age, prior record, remorse, cooperation, complete absence of any prior police contacts and evidence of family support.[16] On this record, it is abundantly clear that Angela Freitag would have qualified for probation under the former sentencing system.

---

[15]RCW 9.94A.010 provides:

"**Purpose.** The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to add a new chapter to Title 9 RCW designed to:

"(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

"(2) Promote respect for the law by providing punishment which is just;

"(3) Be commensurate with the punishment imposed on others committing similar offenses;

"(4) Protect the public;

"(5) Offer the offender an opportunity to improve him or herself; and

"(6) Make frugal use of the state's resources."

[16]These are sometimes called the *Trog* factors, after *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982), *cited with approval in State v. Nelson*, 108 Wn.2d at 503-04. Ms. Freitag clearly meets the *Trog* factors.

One day in jail for vehicular assault is indeed lenient. If that were the only sanction here imposed we would not hesitate to reverse. But 1 day in jail coupled with 89 days converted to 712 hours of community service, community supervision and full restitution to Mr. Ly can withstand appellate review in a case where the offender is young and was inexperienced with the adverse effects of alcohol on her sleep-deprived and jet-lagged body; showed deep remorse; had no record of police contacts whatsoever; agreed to make restitution both to Mr. Ly and to his insurance carrier long before the court ordered restitution; had no predisposition whatsoever to drink and drive or to commit any other traffic, misdemeanor or felony offense; had demonstrated a clear pattern of civic and social responsibility and presented no risk to reoffend in this or any other manner. We find no abuse of discretion here.

## VI

Accordingly, we affirm both the imposition of an exceptional sentence and the particular sentence here imposed.

WEBSTER, C.J., concurs.

FORREST, J.* (dissenting) — The majority holds that a "*complete* absence of criminal history", majority opinion, at 145, is a proper ground for an exceptional sentence. Such a result is contrary to the spirit and the letter of the Sentencing Reform Act of 1981 (SRA) and is not supported by Washington case law. Accordingly, I dissent.

It is important to note that the majority's reasoning would permit an exceptional sentence if the victim had been killed, rather than injured. Indeed, even a person convicted of murder, who like Freitag had no criminal convictions, for this reason alone would be eligible for an exceptional sentence downward. On appeal the only issue would be whether the

---

*Judge Marshall Forrest was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

exceptional sentence was too lenient. Such a result is inconsistent with the structured sentencing of the SRA.

Freitag was a first-time offender.[17] For such defendants the Legislature has conferred broad discretion on the trial court to impose sentences in most cases.[18] The Legislature decided, however, that certain offenses, including vehicular assault, were so serious that the first-time offender option should not be available.[19] It would be inconsistent with that legislative policy to hold that an absence of misdemeanor violations entitles the defendant to the same treatment available to a first-time offender when the Legislature has specifically provided that the option should not be available for the offense in question.

The majority fails to give effect to the Supreme Court's holdings as to lack of criminal history. The Supreme Court has repeatedly stated that the lack of criminal history is not a mitigating circumstance justifying departure from the presumptive sentence.[20] In *State v. Rogers*, 112 Wn.2d 180, 183, 770 P.2d 180 (1989), the court stated:

> One finding was that "defendant has never before been convicted of a crime." That fact does not justify an exceptional sentence. Because criminal history is one of the components used to compute the presumptive range for an offense, it may

---

[17] " 'First-time offender' means any person who is convicted of a felony (i) not classified as a violent offense or a sex offense under this chapter . . . who previously has never been convicted of a felony". RCW 9.94A.030(20)(a)(i).

[18] "In sentencing a first-time offender the court may waive the imposition of a sentence within the standard range and impose a sentence which may include up to ninety days of confinement in a facility operated or utilized under contract by the county and a requirement that the offender refrain from committing new offenses. The sentence may also include up to two years of community supervision . . . ." RCW 9.94A.120(5).

[19] " 'Violent offense' means:

"(a) Any of the following felonies, as now existing or hereafter amended: . . . vehicular assault . . .". Former RCW 9.94A.030(33)(a). Any person convicted of a violent offense is, by definition, not a "first-time offender". RCW 9.94A.030(20)(a)(i).

[20] *State v. Allert*, 117 Wn.2d 156, 168-69, 815 P.2d 752 (1991); *State v. Rogers*, 112 Wn.2d 180, 770 P.2d 180 (1989); *State v. Pascal*, 108 Wn.2d 125, 736 P.2d 1065 (1987).

not be used as a mitigating factor. Such is the clear holding of *State v. Pascal*, 108 Wn.2d 125, 137, 736 P.2d 1065 (1987).

The majority's reliance on *State v. Nelson*, 108 Wn.2d 491, 740 P.2d 835 (1987) to create an exception is not persuasive.[21] The focus in *Nelson* is on RCW 9.94A.390(1)(d), "[t]he defendant, with no apparent predisposition to do so, was induced by others to participate in the crime." This is in essence a failed entrapment defense.[22] The court held that the trial court was entitled to rely on the fact that Nelson's codefendant, Moore, had planned the robberies and, hence, in some sense induced the crime. Under these circumstances, the court held the absence of police contacts "is appropriate for the sentencing judge to consider, in that it *supports* a finding that the defendant lacked the predisposition to commit the crimes." (Italics mine.) *Nelson*, 108 Wn.2d at 498. In other words, lack of predisposition, a legislatively specified reason, was the key factor and the lack of convictions was only evidentiary. In this case there was no such finding and there was no other person involved in the crime. There is nothing here resembling an entrapment offense. Hence, predisposition has little if any significance.

The majority rejects a "narrow" reading of *Nelson*. Majority opinion, at 141. The majority fails to note that *Rogers*, which contains an unequivocal statement that an absence of convictions does not justify an exceptional sentence,[23] was decided after *Nelson*. This strongly supports limiting *Nelson* to its facts, where a codefendant was shown to have been the principal instigator, and Nelson cooperated with authorities to convict the codefendant.

---

[21]See majority opinion, at 139.

[22]David Boerner, *Sentencing in Washington* § 9.12(c)(4) (1985).

[23]"One finding was that 'defendant has never before been convicted of a crime.' That fact does not justify an exceptional sentence. Because criminal history is one of the components used to compute the presumptive range for an offense, it may not be used as a mitigating factor. Such is the clear holding of *State v. Pascal*, 108 Wn.2d 125, 137, 736 P.2d 1065 (1987)." *State v. Rogers*, 112 Wn.2d 180, 183, 770 P.2d 180 (1989).

Neither of those factors is present here. Freitag had no codefendant, and thus did not cooperate with the authorities to convict a codefendant. In fact, Freitag initially even refused to give a Breathalyzer sample. Moreover, Freitag was *the* instigator of this offense: there was no codefendant who encouraged Freitag to drink and then drive.

The majority concludes "that all '0' offender scores are not created equal". Majority opinion, at 140. No statutory language or legislative history is cited to support that conclusion, and I reject it. The majority presumes the Legislature intended that a "0" offender score assumes some unspecified number of misdemeanor offenses which defendants would have, and accordingly, the absence of that mysterious number would be grounds for an exceptional sentence.

The majority acknowledges the lack of any counted criminal history cannot constitute a mitigating factor. Majority opinion, at 140. In other words, if Freitag had one uncounted misdemeanor, she would not be eligible for an exceptional sentence. The majority holds the difference between one uncounted misdemeanor and no misdemeanors justifies an exceptional sentence. I disagree. This distinction is too insubstantial to support the radical consequences of a departure from the standard range. If such a tenuous distinction is to be made, it certainly should be made by the Legislature, not the courts. In fact, the Legislature has impliedly rejected that distinction by providing that misdemeanors are not counted in offender scores, *except* for "serious traffic offense[s]". RCW 9.94A.360(12).

The majority asserts that in *State v. Roberts*[24] and other cases,[25] this court has approved consideration of uncounted misdemeanors as constituting an aggravating circumstance. From that, the majority concludes by some logical symmetry or corollary that a complete absence of such convictions constitutes a mitigating circumstance.[26]

---

[24] 55 Wn. App. 573, 779 P.2d 732, *review denied*, 113 Wn.2d 1026 (1989).

[25] See majority opinion, at 145 n.12.

[26] See majority opinion, at 145.

A brief review of the statutory mitigating circumstances, RCW 9.94A.390(1), will demonstrate their absence does not establish an aggravating circumstance. Likewise, review of the aggravating circumstances, RCW 9.94A.390(2), will demonstrate that their absence does not establish a mitigating circumstance. "The lack of an aggravating circumstance does not create a mitigating circumstance." *State v. Armstrong*, 106 Wn.2d 547, 551, 723 P.2d 1111 (1986). There is no such logical corollary.[27] To hold that uncounted misdemeanors may become an aggravating factor is inconsistent with treating the lack thereof as a mitigating circumstance only if you *assume* that a "0" offender score does not include a complete absence of convictions. If the majority's position that the complete absence of misdemeanors constitutes a mitigating circumstance because the "0" offender score is to be understood as embracing some unspecified number of misdemeanors, then reliance on the presence of such misdemeanors as an aggravating circumstance would be incorrect.[28]

In the absence of a direct holding by the Supreme Court that a lack of any criminal convictions in and of itself constitutes a mitigating circumstance entitling the trial judge to impose an exceptional sentence, I choose to rely on the repeated statements of the Supreme Court that lack of criminal convictions is not a mitigating circumstance. I would limit *Nelson* to its precise facts, where the lack of convictions supports a finding that the defendant lacked a predisposition to commit the crime.

I believe the foregoing analysis is dispositive of this appeal. However, because the majority stated that the trial court's findings should be considered as a whole, I will also analyze them.

Finding of fact 3 states:

> The defendant has led a life where she has shown a concern for people beyond that normally shown by others. Her volun-

---

[27]*State v. Alexander*, 70 Wn. App. 608, 613, 854 P.2d 1105 (1993).

[28]*E.g., State v. Roberts*, 55 Wn. App. at 579.

tary efforts made on behalf of others positively reflects on her character and the quality of life she has led.

There is no effort by the trial court to relate this finding to the philosophy, or to any specific provision, of the SRA. This finding, insofar as it is offered as a reason for a departure from the standard range, implicitly depends on the principle that we punish people for who they are and not what they do; the exact converse of the principles of the SRA. RCW 9.94A.340 explicitly states that the guidelines must be applied "equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant."[29] It hardly need be said that "previous record" means previous criminal record and not the defendant's general life history. Finding of fact 3 is not a substantial and compelling reason for an exceptional sentence.

The court's finding of fact 4 reads as follows:

> The Court believes that there are meaningful punishments that should exist in the law beyond a jail or prison term. There are ways to impose real sanctions on offenders in society other than putting them in jail and the Court acknowledges that restitution and community service hours provide such sanctions.

No effort is made to relate this to any section of the SRA or, indeed, to find any statutory or case law basis. As has been succinctly stated,

> [t]he trial court's subjective determination that these ranges are unwise, or that they do not adequately advance the above goals, is not a substantial and compelling reason justifying a departure.

*State v. Pascal*, 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987).

> Determination of crimes and punishment has traditionally been a legislative prerogative, subject to only very limited review in the courts. *State v. Monday*, 85 Wn.2d 906, 540 P.2d 416 (1975); *State v. Cerny*, 78 Wn.2d 845, 480 P.2d 199 (1971); *Hendrix v. Seattle*, 76 Wn.2d 142, 456 P.2d 696 (1969). A belief on the part of the judiciary that sentencing possibilities are inadequate goes to the wisdom of the dispositional standards

---

[29]I doubt there have been or will be any sentences of 1 day in jail and 89 days' community service for vehicular assault.

and cannot be enough to overcome the legislatively prescribed range of punishment.

*State v. Bryan*, 93 Wn.2d 177, 181, 606 P.2d 1228 (1980). As this court stated in *State v. Harper*, 62 Wn. App. 69, 78, 813 P.2d 593 (1991), *review denied*, 118 Wn.2d 1017 (1992):

> We can empathize with judges who feel frustration with the sentencing options available. In this case the judge stated "I think we are letting ourselves get too impoverished by the options we choose to deal with serious and complex problems of criminal law violations in relation to long-standing addictions. I just think we have to try some of these other things." This view is supported by a number of the materials cited by Harper in his brief. However, no matter how persuasive those arguments may be as a matter of policy, they must be addressed to the Legislature and not to the courts. . . . Our responsibility is to apply the SRA as written.

(Footnote omitted.) Finding of fact 4 is not a substantial and compelling reason for an exceptional sentence.

The trial court's findings of fact 5[30] and 6[31] are implicitly based on RCW 9.94A.010, the SRA's statement of purpose:

> The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences . . . [the chapter] is designed to:
>
> (1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
>
> (2) Promote respect for the law by providing punishment which is just;
>
> (3) Be commensurate with the punishment imposed on others committing similar offenses;
>
> (4) Protect the public;

---

[30]"The sentence imposed by the Court will enable the defendant to improve herself by service to the community and makes frugal use of state and local resources by alleviating the problem of jail overcrowding faced by local government."

[31]"The public will be protected because the defendant does not pose a threat to reoffend and the sentence helps further the purpose of the Sentencing Reform Act in that the punishment is proportional to the defendant[]s criminal history in the sense that defendant is totally lacking in criminal history, not just 'counted' criminal history."

(5) Offer the offender an opportunity to improve him or herself; and

(6) Make frugal use of the state's resources.

RCW 9.94A.010. Finding of fact 5 relies on subsection (5), the offender's opportunity for improvement, and also on subsection (6), frugal use of the state's resources. Finding of fact 6 relies on subsection (4), protection of the public, and also on subsection (1), proportionality.

The general statement of purposes cannot be relied upon directly as a basis for an exceptional sentence.[32] In *Pascal*, 108 Wn.2d at 137, the trial court made the following findings:

> (a) An exceptional sentence is justified to insure [that] punishment is proportionate to the offender's criminal history, which in this case is zero.
>
> (b) Protection of the public must be considered, and Mary Louise Pascal does not pose a threat to the public.
>
> (c) An offender is to be offered an opportunity to improve herself, and Mary Louise Pascal has demonstrated her ability and willingness to improve herself vocationally and educationally.
>
> (d) Frugal use of the State's resources must be considered and the imposition of institutional confinement would be contrary to this purpose.

These reasons are very similar to those accepted by the trial court here, and rejected by the Supreme Court in *Pascal*:

> We note that these considerations, standing alone, would not justify an exceptional sentence. The first reason listed, the defendant's criminal history, is one of the components used to compute the presumptive range for an offense under the sentencing reform act. Therefore, criminal history may not be counted again as a mitigating circumstance to justify departure from the range. The next three reasons are also inadequate. The Legislature has stated that the sentencing reform act was designed to promote several significant interests, including protection of the public, the need for rehabilitation, and the need to make frugal use of state resources. *See* RCW 9.94A.010(4), (5), (6). The presumptive sentence ranges established for each crime represent the legislative judgment as to how these interests shall best be accommodated. *See* D. Boerner, § 2.5(b), (c), (d). The trial court's subjective determination that these ranges are unwise, or that they do not ade-

---

[32]*State v. Pascal*, 108 Wn.2d at 137-38, *quoted with approval in State v. Gaines*, 122 Wn.2d 502, 513, 859 P.2d 36 (1993); *State v. Alexander*, 70 Wn. App. at 615-17.

quately advance the above goals, is not a substantial and compelling reason justifying a departure.

(Citation omitted.) *Pascal*, at 137-38.

Aside from *State v. Friederich-Tibbets*,[33] which I find unpersuasive for the reasons stated in my dissent in that case,[34] there is simply no case cited which sustains an exceptional sentence merely by citing to the statement of purposes of the SRA in the absence of some factors inherent in the commission of the crime.

Taken in toto, the trial court's findings indicate a belief the SRA should be amended. The majority improperly does so by its holding.

I would reverse and remand for sentencing within the standard range.

---

[33]70 Wn. App. 93, 853 P.2d 457 (1993), *rev'd on other grounds*, 123 Wn.2d 250, 866 P.2d 1257 (1994).

[34]Two panels of this court have declined to follow *Friederich-Tibbets. See State v. Alexander*, 70 Wn. App. at 617; *State v. Hodges*, 70 Wn. App. 621, 625, 855 P.2d 291 (1993).