[No. 35583-0-I.   Divison One.   May 28, 1996.]

THE STATE OF WASHINGTON, *Appellant*, v. ANZALA HA'MIM, *Respondent*.

*Norm Maleng, Prosecuting Attorney*, and *Howard Schneiderman, Deputy*, for appellant.

*David B. Koch* and *Nielsen & Acosta*, for respondent.

AGID, J. — The State appeals Anzala Ha'mim's exceptional sentence downward on the ground that the trial court improperly relied on Ha'mim's lack of prior police contacts and her age at the time of the crime as mitigating factors. We agree that recent case law addressing the validity of these mitigating factors requires that we reverse Ha'mim's sentence.

## FACTS

On May 1, 1994, Anzala Ha'mim, her twin sister Awayla, and a male companion went to the Hair Skill Design Salon on Beacon Avenue South in Seattle. The store was closed but two employees, Joseph David Baril and Hon Nan Yan, were standing in the front of the shop. The group walked in and Awayla Ha'mim asked if she

could make a hair appointment. The male asked if he could use the bathroom. Baril told him he could not because another employee was using it. Anzala Ha'mim then pulled a .38 caliber revolver from her coat, pointed it at Hon Nan Yan and ordered her into the bathroom at the back of the shop. King Fai Yan, Hon Nan Yan's brother, was leaving the bathroom when Hon Nan Yan came inside followed by Anzala Ha'mim. Ha'mim pointed her gun at King Fai Yan and ordered him to the ground. With the gun pointed at his head, she took his wallet from his back pocket.

Meanwhile, the male was at the cash register demanding money from Baril. Baril, who is hearing impaired, did not respond and ordered the male out of the salon. Anzala Ha'mim came out of the bathroom and pointed the gun at Baril. At the same time, the male tried to grab him. King Fai Yan came out of the rest room and both he and Baril struggled with Anzala Ha'mim over the gun. During the struggle, a round was fired into the salon's plate glass window. Awayla Ha'mim and the male ran out of the salon. Anzala Ha'mim also tried to flee but Baril tripped her and held her at gunpoint until the police arrived.

The State charged Anzala Ha'mim with first degree robbery and attempted first degree robbery, alleging both were committed with a deadly weapon. Ha'mim pleaded guilty to first degree robbery with a deadly weapon enhancement. She had no prior offenses and faced a standard range sentence of 55 to 65 months. She was 18 when she committed her crime. She requested an exceptional sentence downward based on her youth and her lack of prior police contacts. The court agreed and sentenced her to 31 months. The State appeals.

## DISCUSSION

■ The trial court concluded that Ha'mim's lack of prior police contacts was a valid mitigating factor justifying an exceptional sentence downward under this court's opinion in *State v. Freitag*, 74 Wn. App. 133, 873 P.2d 548

(1994), *rev'd*, 127 Wn.2d 141, 896 P.2d 1254, 905 P.2d 355 (1995). In that case, the defendant had an offender score of 0. The trial court gave her an exceptional sentence downward because, apart from having no criminal history that counted in her offender score, she had had no prior contacts with the police at all. In a split decision, this court held that, although a trial court may not consider a defendant's lack of criminal history which has already been factored into her offender score, it may properly consider her complete lack of police contacts to impose a sentence outside the standard range. 74 Wn. App. at 140–41. After Ha'mim was sentenced, the Supreme Court, in a per curiam opinion from which three justices dissented, reversed *Freitag*, stating it has consistently "held that lack of criminal history is an insufficient ground for sentencing below the standard range since the Legislature specifically considered criminal history when establishing standard sentencing ranges. 'Because criminal history is one of the components used to compute the presumptive range for an offense, it may not be used as a mitigating factor.' " *Freitag*, 127 Wn.2d at 144 (quoting *State v. Rogers*, 112 Wn.2d 180, 183, 770 P.2d 180 (1989)). Unlike this court, the Supreme Court did not address any distinction among prior police contacts, criminal history like misdemeanors, that are convictions but are not factored into a defendant's offender score and the kinds of prior convictions that are accounted for in an offender score. Because the Supreme Court apparently did not consider this distinction significant, we conclude from its reversal in *Freitag* that a sentencing court may not rely on a defendant's lack of prior police contacts as a mitigating factor, even though it is not considered in calculating her offender score.

Ha'mim argues that, notwithstanding the Supreme Court's opinion in *Freitag*, the trial court properly relied on her lack of prior police contacts as a mitigating factor under *State v. Nelson*, 108 Wn.2d 491, 740 P.2d 835 (1987). Nelson received an exceptional sentence downward under RCW 9.94A.390(1)(d), which allows a sentencing court to

consider as a mitigating factor that the "defendant, with no apparent predisposition to do so, was induced by others to participate in the crime." The Supreme Court affirmed, holding that the trial court's conclusion that Nelson lacked predisposition to commit the crime was supported by its finding that he "had not only a zero offender score under the SRA scoring grid, but that he had a *complete* absence of police contacts, a factor not already accounted for under the SRA." (Italics in original.) 108 Wn.2d at 498. The court further stated that the "complete lack of misdemeanors, beyond the absence of felonies that renders a zero offender score is appropriate for the sentencing judge to consider, in that it supports a finding that the defendant lacked the predisposition to commit the crimes." (Citations omitted.) 108 Wn.2d at 498.

At first blush, *Nelson* and *Freitag* appear inconsistent. In the former, the Supreme Court approved of the sentencing court's considering the defendant's lack of prior police contacts in setting an exceptional sentence downward, but in the latter it did not. Unfortunately, the Supreme Court's lead opinion in *Freitag* does not mention or discuss *Nelson*, despite the amount of attention devoted to it by both the majority and the dissent in this court's *Freitag* opinion. We must agree with Ha'mim that the Supreme Court's failure to discuss *Nelson* in *Freitag* offers lower courts and practitioners precious little guidance on the issue of when a sentencing court may properly consider a defendant's lack of prior police contacts in imposing an exceptional sentence downward.

The only real distinction we can discern between *Freitag* and *Nelson* is the manner in which the sentencing court used the defendant's lack of prior police contacts to justify an exceptional sentence. The court in *Nelson* based its exceptional sentence on RCW 9.94A.390(1)(d). Under this provision, a court can consider evidence of a failed entrapment defense, i.e., evidence that the defendant lacked predisposition to commit the crime and was induced by others to commit it, at sentencing even though

he was unable to prove entrapment at trial. *See Freitag*, 74 Wn. App. at 141. The court concluded Nelson had established a lack of predisposition and that he had been induced to commit the crime based on his lack of prior police contacts and his cooperation in the State's prosecution of his cohort. Thus, the sentencing court in *Nelson* did not rely on the lack of prior police contacts per se as a mitigating factor. Rather, it considered it as evidence in support of a statutory mitigating factor. *See Freitag*, 74 Wn. App. at 152 (Forrest, J., dissenting).

In contrast, the sentencing court in *Freitag* treated the defendant's lack of prior police contacts in and of itself as a mitigating factor. This court's majority opinion in *Freitag* held that the court could properly consider a lack of prior police contacts because that fact alone demonstrated an absence of a predisposition to commit crimes. 74 Wn. App. at 145. Our *Freitag* opinion thus allowed the trial court to equate lack of predisposition with a defendant's lack of prior police contacts. In the majority's view, it "would seem an exceedingly odd and strained interpretation of *Nelson* to limit the significance of an offender's lack of any uncounted criminal history . . . to the so-called 'failed entrapment defense' cases." 74 Wn. App. at 141. The opinion, therefore, extended *Nelson* by allowing a sentencing court to base an exceptional sentence solely on the lack of predisposition to commit the crime, which, standing alone, is not a statutory mitigating factor because it omits the inducement prong of RCW 9.94A.390(1)(d). Although the Supreme Court did not mention *Nelson* in reversing *Freitag*, we surmise that when it reversed this court, it must have implicitly rejected this reasoning. We therefore conclude that limiting a trial court's consideration of a defendant's lack of prior police contacts to failed entrapment cases is precisely what the Supreme Court intended to accomplish in *Freitag*.[1]

Here, the court justified Ha'mim's exceptional sentence

---

[1]The need for a clear statement from the Supreme Court on the distinction between the contexts in which a court may consider a lack of prior police

downward by her lack of predisposition to commit first degree robbery as evidenced by her lack of prior police contacts. Because the court did not rely on the statutory mitigating factor set forth in RCW 9.94A.390(1)(d) and made no finding of inducement, this case does not fall under *Nelson*. It is controlled by *Freitag* and, under that case, the trial court erred in basing an exceptional sentence on its finding that Ha'mim lacked a predisposition to commit the crime solely because she did not have any prior police contacts.

The trial court also concluded that Ha'mim's youth at the time of her offense was a mitigating factor justifying an exceptional sentence downward. Although the trial court cited no authority for this finding, Ha'mim argues it is supported by RCW 9.94A.390(1)(e), which allows a court to consider whether the "defendant's capacity to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law[] was significantly impaired." We recently considered and rejected a similar argument in *State v. Scott*, 72 Wn. App. 207, 213, 866 P.2d 1258 (1993), *aff'd*, *State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995). There, the defendant received an exceptional sentence of 900 months for first degree murder. On appeal, he claimed his age at the time of the murder, 17, should have been considered as a mitigating factor under RCW 9.94A.390(1)(e) because it limited his capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law. This court remarked that his argument "borders on the absurd." *Scott*, 72 Wn. App. at 218. We noted that

contacts and those in which it may not is evident from this case and *State v. Baucham*, 76 Wn. App. 749, 887 P.2d 909 (1995). There, another division of this court cited *Nelson* for the proposition that the "Supreme Court has held the sentencing court may consider the fact [that] a defendant not only has a zero offender score, but also a complete absence of police contacts, an item not already accounted for under the Sentencing Reform Act of 1981." 76 Wn. App. at 752. The *Baucham* court cited to RCW 9.94A.390(1)(d), but did not discuss the inducement prong of that statute, holding that a finding of "lack of predisposition by itself warranted an exceptional sentence below the standard range." 76 Wn. App. at 753. The court filed its opinion in *Baucham* about 5 months before the Supreme Court's opinion in *Freitag*, but it is not mentioned there.

although "teenagers are more impulsive than adults and lack mature judgment . . . Scott's conduct cannot seriously be blamed on his 'lack of judgment' [because p]remeditated murder is not a common teenage vice." (Italics omitted.) 72 Wn. App. at 219.

The record does not support a conclusion that Ha'mim participated in the armed robbery because she lacked mature judgment. Nor can it be seriously argued that robbery is a "common teenage vice." On the contrary, the evidence suggests that the crime and the participants' roles were preplanned. Ha'mim assumed a primary role in the robbery by wielding the gun and pointing it at the victims. Her age alone cannot justify an exceptional sentence downward under the facts of this case. *See Scott*, 72 Wn. App. at 213–14 (A "factor is legally adequate to justify a sentence outside the standard range as long as [it] was not necessarily considered by the Legislature in establishing the standard range, and [it] is 'sufficiently substantial and compelling to distinguish the crime in question from others in the same category.' ") (quoting *State v. Grewe*, 117 Wn.2d 211, 216, 813 P.2d 1238 (1991)).

We reverse Ha'mim's exceptional sentence because neither reason given by the sentencing judge justifies a sentence outside the standard range. *See* RCW 9.94A.210(4) (to reverse a sentence outside of the standard range, a reviewing court must find that the reasons given by the sentencing judge are not supported by, the record, that they do not justify a sentence outside the standard range or that the sentence is clearly excessive or lenient). Because the Supreme Court's decision in *Freitag* was filed after the trial court imposed the sentence in this case, we do not mandate imposition of a standard range sentence on remand. Rather, we give the trial court an opportunity to reevaluate the exceptional sentence in light of that opinion.

The sentence is reversed and the case is remanded for resentencing.

KENNEDY, A.C.J., and ELLINGTON, J., concur.

Review granted at 130 Wn.2d 1007 (1996).